**CLEVELAND BOAT SERVICE, INC., Plaintiff-Appellee, v. CLEVELAND (City), Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23437.   Decided November 30, 1955.

558

Karl J. Ertle, James M. Smith, for plaintiff-appellee.
Ralph S. Locher, Director of Law, for defendant-appellant.

## OPINION

By KOVACHY, PJ:

This appeal is on questions of law from the Common Pleas Court where The Cleveland Boat Service, Inc., plaintiff-appellee, recovered a judgment upon a jury verdict for $50,000.00 against the City of Cleveland, defendant-appellant. The suit was for damages, the plaintiff claiming that the defendant interfered with land and property, held under a leasehold, in the construction of a Freeway adjacent to Lake Erie and known as Memorial Freeway East. The lease extended from September 1, 1944 to August 31, 1959 on land described as "* * * fronting on Lake Erie and which is bounded on the south by Lake Front Drive, on the north by the waters of Lake Erie, on the west by Marquette Street, Northeast, and the prolongation thereof, and on the east by the easterly line of lessor's property." Plaintiff operates a boat yard for the sale, storage and repair of pleasure boats and some small commercial craft. The Ohio Chemical Company and its successor, The Air Reduction Company, Inc., through renewals and extensions had leased the premises since 1934. The land leased was entirely surrounded by a fence.

The City of Cleveland passed an ordinance in 1935 proposing a Lake Front Road. This was amended in 1939, establishing a defined width of 230 feet for said Road. The City, in 1936, had constructed a temporary roadway at a much narrower width than the 230 feet strip described in the ordinance, the northerly line being about 150 feet south of the north boundary fixed by ordinance. No part of the temporary road impinged upon land leased to plaintiff's predecessors and land so leased remained intact within a fenced-in area throughout. The construction of the permanent roadway was started by the Highway Department of

the State of Ohio in 1952. The City of Cleveland, under its agreement with the State, was required to appropriate and make available all land needed in its construction. The plaintiff charged that the freeway required an area about 150 feet wide across the southerly portion of its land containing thereon three small buildings.

The City of Cleveland instituted condemnation proceedings in 1952 against the Ohio Chemical Company, now known as the Air Reduction Company, Inc., and the plaintiff, under §1178-37 GC of the State of Ohio. While these proceedings were pending, it bought the uplands owned by the Air Reduction Company, Inc. south of the Freeway, together with all its interests in the filled or accreted lands and littoral rights in the waters of Lake Erie in front of this property. The land occupied by the Cleveland Boat Service, Inc. was north of the old roadway. The quit claim deed transferring the property purchased contained the provision "subject to the terms of the lease between the grantor and the Yacht Terminal, Inc., a. k. a. Cleveland Boat Service, Inc." Thereupon the appropriation case was dismissed and Ordinance No. 123-53 passed by the Council of the City of Cleveland taking over all property within the boundaries of "the Cleveland Memorial Shoreway Northeast (230 feet wide) established by Ordinance No. 1271-A-39" and directing all occupants "to vacate said premises and remove any and all construction equipment and any other property, real and personal, lying within the above described premises" and providing that claims for damage, if any, be made in writing to the City Clerk, the same to be "judicially inquired into upon the completion of the improvement * * *."

Upon the completion of the project in front of its place of business, the plaintiff brought its action for damages. Its petition claims that it suffered these items of damage through the construction of the Freeway:

"1. For its fence, gates, the concrete piers in which the gate posts were set, the removal and reinstatement of all of the same-Two Thousand Two Hundred Dollars ($2,200.00).

"2. For its buildings, removal, reinstatement of same, reinstatement of machinery and equipment and re-wiring of same-Nine Thousand Dollars ($9,000.00).

"3. For the loss of the use of the storage space for fifty-two (52) boats for the remaining six years of the lease-Twenty-one Thousand Dollars ($21,000.00).

"4. For the loss of the use of its marine railway and the replacement by a machine to accomplish the same purpose; the removal of the boats from the water and the re-launching of the same-Twenty-five Thousand One Hundred Nine Dollars ($25,109.00).

"5. For the loss of access to the main east and west roadway and the loss of business resulting from the prevention of its customers from having an easy access to its place of business-the sum of Fifty Thousand Dollars ($50,000.00), or a total of One Hundred Seven Thousand Three Hundred Nine Dollars ($107,309.00) plus interest."

The defenses interposed by the City of Cleveland to plaintiff's petition were:

1) That the ordinances of 1935 and 1939 established the boundaries

of the permanent roadway which on the northerly side was the southerly boundary line of plaintiff's property since the leasehold of the plaintiff described the land leased to it as "bounded on the south by Lake Front Drive," and that as a consequence, no part of the Freeway traversed property leased to the plaintiff.

2) That all of plaintiff's property is on and over lands filled in north of the natural shore line of Lake Erie, that title to this land reposes in the State of Ohio, and that, as a result, the lessor lacked the right or the title to give a valid lease to plaintiff.

3) That the action was prematurely brought because the project at the time had not been completed.

4) That the City of Cleveland had succeeded to any and all rights of the Air Reduction Company, Inc. and the Cleveland Boat Service, Inc., having purchased the property.

Defendant's brief lists seven points for arguments although the assignments of error set forth many more. We confine ourselves to the consideration of the seven points.

1. THE LESSOR COULD NOT AND DID NOT LEASE ANY PART OF THE 230 FEET STRIP TO THE PLAINTIFF.

4. THERE WAS ERROR OF LAW IN REFUSING CERTAIN TESTIMONY OFFERED BY THE DEFENDANT.

The City was not permitted to introduce evidence that the leased land was artifically formed by filling north of the 1914 shore line of Lake Erie in front of the upland property of the Ohio Chemical Company, now the Air Reduction Company, Inc., the lessor. Such evidence was proffered for the record. The defendant claims this to be reversible error for the reason that if it can establish such to be the fact and the law be as it maintains, the State of Ohio is the title holder of the land as trustee for the public and the lessor was without right or authority to execute a valid lease to the plaintiff. The trial court sustained objections to the introduction of all such evidence on the ground that the City was estopped from denying the validity of a leasehold recited in a deed it had accepted when purchasing the lands and all interests in the property from the Air Reduction Company, Inc.

We shall deal at length with this question since its resolution may have a far-reaching effect upon the ultimate outcome of this lawsuit.

The equitable theory of estoppel is well recognized in law. Its basic concept is founded upon the principle that a party has by its own voluntary act placed himself in a situation as to some matter of fact that he is precluded from denying. Sprigg v. Bank of Mt. Pleasant, 35 U. S. 257.

Estoppel by deed is the precluding of a party from denying a certain fact recited in the deed executed by or accepted by him in an action brought upon the instrument by the party to be detrimentally affected thereby. We have no quarrel with the authorities cited by plaintiff on this proposition. The question presented, rather, is whether the doctrine of estoppel was properly invoked against the City of Cleveland by the trial judge under the peculiar facts of this case.

The Supreme Court of Ohio in State v. C & P Rd. Co., 94 Oh St 61, states the law applicable to artifically filled land of Lake Erie as follows in the syllabus of the case:

"2. The title and rights of littoral and riparian proprietors in the subaqueous soil of navigable waters, within the limits of a state. are governed by the laws of the state, subject to the superior authority of the federal government.

"3. The title of the land under the waters of Lake Erie within the limits of the state of Ohio, is in the state as trustee for the benefit of the people, for the public uses to which it may be adapted.

"5. The littoral owner is entitled to access to navigable water on the front of which his land lies, and, subject to regulation and control by the federal and state governments, has, for purposes of navigation, the right to wharf out to navigable water.

"6. The ownership of the waters of Lake Erie and of the land under them within the state is a matter of public concern. The trust with which they are held is governmental, and the state, as trustee for the people, cannot by acquiescence or otherwise abandon the trust property or permit a diversion of it to private uses different from the object for which the trust was created. The littoral owner is charged with knowledge that nothing can be done by him that will destroy the rights of the public in the trust estate."

It necessarily follows from this decision that if the land involved in this case was formed by fill in the waters of Lake Erie north of the natural shore line of property owned by the lessor, the title to it reposes in the State of Ohio as trustee for the benefit of the people and the lessor was without any right whatever to execute a lease with respect to it. A lease executed pertaining to land so created and so situated is void ab initio. The fact remains, however, that a lease was executed by the Ohio Chemical Co., now the Air Reduction Co., Inc. to the Yacht terminal, Inc., now the Cleveland Boat Service, Inc., and a deed including the property described in the leasehold was accepted by the defendant from the Air Reduction Co., Inc., reciting the fact that it was purchasing the property subject to such leasehold.

The question before us thus becomes: Is a party that accepts a deed to real estate containing a provision that the property acquired is subject to an existing lease of part of the land conveyed estopped from challenging the validity of the lease on the ground that the same is void? Putting it more succinctly: Does estoppel by deed apply to an instrument that is void? We hold that the answer to that question must be in the negative for to hold otherwise would in effect be saying that a right can be created by the mere recitation that it exists. Estoppel by deed presupposes that some interest in land exists by sanction of law. If none in fact was created, how can the mere opportunity to deny it infringe upon, contravene or jeopardize the right or interest of anyone?

Fair title, on the several Demises of Mytton and others, against Gilbert and others, 100 English Reports Reprint 91 (1787):

"The trustees of a public Turnpike Act, which empowers them to erect toll-houses and mortgage the tolls, and which declares that there shall be no priority among the creditors, have no power to mortgage the toll-houses or gates. If, in fact, they have made such a mortgage, and an ejectment is brought against them by the mortgagee, they are not

estopped by their deed from insisting that the Act gives them no such power." Swanson et al v. Grayson et al, 109 Okla. 264, syllabus 1:

"A deed executed by a Creek freedman attempting to convey the allotment of her minor child, who is likewise a Creek freedman, is void, and no rule of estoppel operates to prevent the assertion of its invalidity."

See also Charles et al v. Cartright et al, 53 Ark. 358; Phillips v. Lowenstein, 91 Fla. 89; Gordon v. City of San Diego, 101 Calif. 522; Caffrey v. Dudgeon, 38 Ind. 512; Doe on the Demise of Stevens v. Hays, 1 Ind. 247; Mullen v. Pickens, 250 U. S. 590; Altemus v. Nickell, 115 Kentucky 506; Briggs v. Sample, 43 Fed. 102; Alt v. Banholzer, 39 Minn. 511; Smith v. Ingram, 130 N. C. 100; Trustees v. Satterfield, 2 C. C. R 86; **Wallace's Lessee v. Minor, 6 Ohio 367.**

It seems obvious to us from the above that error prejudicial to the substantial rights of the defendant was committed by invoking the principle of estoppel against it and by not permitting it to introduce all relevant evidence bearing on the question of whether the land leased was artifically made in the waters of Lake Erie in an attempt to show that the lessor did not have the right or title to lease any part of the 230 feet strip required for the Freeway. Such evidence was clearly material to a vital issue in the case and admissible under applicable law.

Defendant's claim that the land described in the lease was north of the 230 feet strip allotted to the Freeway is untenable under the undisputed facts disclosed by the record. The first lease applying to this land, dated August 31, 1936, recites that the southerly line of the property is the northerly line of Lake Front Blvd., said road was described as "the road or highway now being constructed by the City of Cleveland across lessor's property." All subsequent leases comprised identical land. The ordinances of 1936 and 1939 declared the intention of the City to build a Freeway and established its boundaries but did not appropriate any territory required for the construction of this road and as a result in no way disturbed any of the land except such as was actually needed to complete the first narrow road built, known as Lake Front Drive. The lease now held by plaintiff states in the habendum clause "lessor does hereby let and lease unto the lessee all of the lessor's right, title and interest in and to the land fronting on Lake Erie which is bounded on the south by Lake Front Drive * * *."

From this background, it seems clear to us that the intention of the parties to the lease now operating was to take the northerly line of the temporary road as the southerly line of the property leased. The present road accordingly traverses the south portion of the land described in the lease.

3. THERE WAS ERROR OF LAW WITH RESPECT TO ADMISSION OF EVIDENCE OFFERED BY THE PLAINTIFF.

The defendant claims that since it is now the landlord, the plaintiff is entitled to damages, if at all, for interference by it of the peaceful enjoyment of the land leased. The plaintiff, on the other hand, maintains that its action is one for damages for the appropriation by the City of part of the land and buildings leased to it. We believe the plaintiff's contention the proper one under the facts of this case.

The measure of damages for the appropriation of part of the land in the lease is set forth in 15 O. Jur. 838, Sec. 147:

"Where the property appropriated is subject to a tenancy for years, the measure of damages to the tenant is the difference in the rental value of the premises before and after the improvements; that is, the diminution in the value of the leasehold. There is no error in admitting evidence as to the value of the buildings, even though the tenant has a right to remove them at the end of the lease."

The Supreme Court of Ohio in 11 Ohio 408, Foote v. City of Cincinnati, said:

"2. The liability of a lessee to pay rent subsists, notwithstanding the leasehold has been appropriated for a street, and he is entitled to a compensation from the city for this liability."

See City of Cincinnati v. Smythe et al, 57 Oh Ap 70 and Appropriation of Land Under Lease, 18 O. C. C. (N. S.) 446.

The record discloses the introduction of voluminous testimony on the question of damages suffered by the plaintiff in the diminution of his space in the construction of the road. Defendant claims that most of the evidence allowed in the record under this heading was erroneous and prejudicial. We have read all of it and find much that was incompetent, irrelevant and immaterial to prove damages in the case. It is our view that the trial court committed reversible error in admitting the cose of the **actual replacement** of the fence and buildings, the cost of a crane to replace the damaged marine railroad, sales and profits and losses in the conductance of the business, opinion evidence as to the total damages to the physical assets, buildings, and loss of rentals of boats due to reduction of area, financial background of the lease, and expenditures incurred by the plaintiff in developing the leased property. The measure of damages of property appropriated is its actual value or fair market value. Profits and losses in a business was too speculative to have probative value and the financial phase of obtaining a lease and monies expended in developing the property is incompetent and irrelevant to determine damages and, therefore, wholly inadmissible. Judge Stewart in **In Re Appropriation, 155 Oh St 454, at page 459,** has the following to say with respect to profits:

"As a rule, profits from commercial businesses on premises cannot be shown in an appropriation proceeding for the reason that such profits are too speculative, depending as they do upon the acumen and skill of the one who carries on the business, but, assuredly, it is proper to show the kinds of businesses to which the premises are adaptable."

C. C. C. & St. L. Ry. Co. v. McKelvey, 12 O. C. C. 426, syllabus 7:

"The measure of damages is the actual value of the property, and not what it would have cost to reconstruct or replace the same, with deductions for wear and tear. Under such a rule the damages might far exceed the actual value of the property and the actual loss to plaintiffs. Where property totally destroyed has a market value, that market value is the measure of compensation for the loss."

City of Bellevue v. Stedman, 63 Oh Ap 150, syllabus 3:

"In a condemnation proceeding to determine the damage to proper-

ties abutting upon a grade-crossing elimination project, evidence as to incidental damages by way of inconvenience, interference with business, loss of profits, goodwill or anticipated future profits, is inadmissible."

Defendant also complains that the trial court wrongfully permitted testimony over its objection bearing on the matter of the interference with access to the property. With respect to this, the plaintiff argues that such evidence relates to two phases of the case—one, loss of access during the construction of the roadway and two, loss of permanent access resulting from the completed Freeway and that the jury's verdict, being general, no conclusion can be drawn as to whether the jury made allowance for one or both of these claims. The evidence is clear, however, that due to the construction of this road, the access to this property is more circuitous since side roads must be traversed for ingress and egress. In our opinion, the evidence with respect to the circuitous course that must be taken to get to plaintiff's property since the completion of the Freeway, was improperly admitted. The Supreme Court, in State, ex rel. v. Linzell, 163 Oh St 97, stated at page 102:

"Mere circuity of travel, necessarily and newly created, to and from real property does not of itself result in legal impairment of the right of ingress and egress to and from such property, where any resulting interference is but an inconvenience shared in common with the general public and is necessary in the public interest to make travel safer and more efficient."

We believe, however, that there was an issue of fact with respect to the interference of ingress and egress during the construction of the road as to whether or not such interference was caused or contributed to by any unreasonable, negligent or unskillful acts of the workers constructing the road. The Colonial Furniture Co. v. Cleveland Union Terminal Co., 47 Oh Ap 399, syllabus 4 states the law in this regard as follows:

"4. Public officers lawfully employed in making public improvements, and corporations engaged in performance of work of public nature authorized by law, are not liable for consequential damages occasioned to others unless caused by misconduct, negligence or unskillfulness."

All evidence bearing on this phase of the case of interference with ingress and egress of plaintiff's property was properly admitted and we find no error in that regard.

5. THERE WAS ERROR OF LAW IN THE SPECIAL CHARGES GIVEN AT PLAINTIFF'S REQUEST AND THEN THE COURT'S GENERAL CHARGE. With respect to this matter, plaintiff contends that five of the six special charges requested by plaintiff and given to the jury before argument stated incorrect propositions of law. They all deal with the measure of damages. They deal (1) with the measure of damages to a tenant holding a lease on property that has been appropriated; (2) value of buildings, structures and fixtures; (3) value to be given fence; (4) measure of damages in the replacement of the marine railroad; (5) value of the use of property to the plaintiff himself. These charges gave the jury the yardstick to use in determining damages to the plaintiff in regard to the particular subjects mentioned. We find the same

vices appearing in each, in one way or another, as were discussed by us when considering the testimony introduced in evidence to prove the same elements of damage. It would serve no useful purpose to repeat here what we said in connection therewith. We hold that the trial court committed error prejudicial to the substantial rights of the defendant in submitting these charges to the jury before argument for the reason that they do not state correct propositions of law

The trial court, in its general charge, told the jury that the court had already determined the lease to be valid and that the matter of filled land or the Freeway being constructed in aid of navigation and commerce was no part of the case. It then proceeded to say "so that leaves only one question for this jury to determine and that is the question of damages." This charge, in view of the issues discussed in this opinion, was highly prejudicial to the substantial rights of the defendant and, standing alone, requires a reversal of this cause.

6. THERE WAS ERROR IN THE COURT'S REFUSAL TO GIVE DEFENDANT'S CHARGES BEFORE ARGUMENT. The court was requested by defendant to give five separate charges to the jury before argument. The court did give charge No. 1 but refused the remaining four. The request labeled No. 2 dealt with the law as regards obtaining title by adverse possession. This charge, we feel, was properly refused by the court since no such issue was raised in the case. The other stated the law in regard to the title of the artificially created land in Lake Erie and the rights flowing therefrom to a municipality by virtue of §721.04 R. C. While, in the main, these charges were abstract statements of the law, they, nevertheless, were applicable to the issues raised in this case and in our opinion should have been submitted to the jury.

7. THE DAMAGES AWARDED BY THE JURY WERE EXCESSIVE AND APPEARED TO HAVE BEEN GIVEN UNDER THE INFLUENCE OF PASSION OR PREJUDICE. There can be no doubt whatever that the amount of the verdict brought in this case cannot be sustained. It was based on testimony relating to damages, a large part of which was highly improper. The lease contains a cancellation clause under which a price to be paid lessee for permanent improvements installed in the premises is established in the event of termination of the leasehold. That figure at the time of this lawsuit amounted to about $8,200.00. The total rent for the years remaining for the entire property leased amounted to $8400.00. In view of these facts, a verdict of $50,000.00 as damages for the appropriation of only part of the land leased is manifestly excessive.

2. THE CITY OR THE STATE HAS THE RIGHT TO TAKE POSSESSION OF THE PROPERTY AND INQUIRE INTO DAMAGES, IF ANY, AFTER THE HIGHWAY WAS COMPLETED. We overrule this assignment of error. The defendant was in no way prejudiced even if this action was brought before completion of the Freeway.

We unanimously hold that the City of Cleveland was not accorded substantial justice in the trial of this cause and that the judgment of the Common Pleas Court must be and hereby is reversed as being contrary to law and the cause remanded for further proceedings according to law.

568

Judgment reversed and cause remanded. Exceptions. Order see journal.

SKEEL, J, HURD, J, concur.