[Cite as *Miller v. Cloud*, 2016-Ohio-5063.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| MARTIN E. MILLER, et al., | ) | CASE NO. 15 CO 0018 |
| | ) | |
| PLAINTIFFS-APPELLEES, | ) | |
| CROSS-APPELLANTS, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| SHARRON L. CLOUD, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS. | ) | |
| CROSS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from the Court of Common
Pleas of Columbiana County, Ohio
Case No. 2013 CV 570

JUDGMENT:                                    Affirmed.

APPEARANCES:

For Plaintiff-Appellee:                    Atty. David Tobin
617 St. Clair Avenue
P.O. Box 114
East Liverpool, Ohio  43920

For Defendant-Appellant:              Atty. David A. Detec
Atty. Thomas F. Hull II
Manchester Newman & Bennett
201 E. Commerce Street
Youngstown, Ohio  44503

JUDGES:

Hon. Carol Ann Robb
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated:  July 22, 2016

ROBB, J.

{¶1} Defendants-Appellants/Cross-Appellees Sharron Cloud (Cloud) and Plaintiffs-Appellees/Cross-Appellants Martin and Susan Miller (Millers) appeal the Columbiana County Common Pleas Court's decision to grant summary judgment in part to Cloud and in part to the Millers. This case involves the conveyance of real property to the Millers in 1995 and whether or not that conveyance included the oil and gas mineral interests. In 1995, the Millers received a deed to the property containing the words "SURFACE ONLY." They sought reformation of the deed and argued the conveyance included the oil and gas mineral estate that had not been previously reserved. The trial court granted the request to reform the deed. Prior to the litigation, Cloud signed an oil and gas lease with Defendant Chesapeake Exploration, received a signing bonus, and spent nearly the entire signing bonus. During pendency of the litigation, royalties from the oil and gas lease were placed into an escrow account. The Millers sought both the royalties and signing bonus. The trial court determined the Millers were entitled to the royalties, but not the signing bonus. Cloud appeals the trial court's decision to reform the deed and the decision to pay royalties earned during the pendency of the litigation to the Millers. The Millers appeal the trial court's decision permitting Cloud to retain the signing bonus.

{¶2} Multiple issues are raised in this appeal, including whether the statute of limitations has run, whether reformation is available as a remedy, whether Cloud is entitled to royalties, and whether the Millers are entitled to the signing bonus.

Statement of the Facts and Case

{¶3} In May 1995 Linda A. Cloud died. She was married to Thomas J. Cloud and owned approximately 22 acres, which included a bungalow home, located at 34224 Lisbon–Dugannon Road in Lisbon, Ohio. In October 1995, the property sold at auction to the Millers for $28,000.00, which was close to its appraised value of $30,0000.00. The executor of the estate was Attorney Robert C. Roberts.

{¶4} The purchase contract from the auction contained a notation, "This transaction, pending completion of title guaranty, status of mineral right can not [sic] be guaranteed." The purchase contract was signed by the Millers. After the title

search was performed by McMillan Abstract Company Agency, Inc., an agent for Chicago Title, the title insurance company would only guarantee the surface. The title guarantee commitment contained a description of the property to which McMillan Abstract added the words "SURFACE ONLY" on the top and bottom of the page containing the legal description. The Executor's deed, likewise, stated "SURFACE ONLY" following the legal description of the property conveyed.

{¶5} Approximately one month after Linda's death, Thomas remarried; his new wife was Sharron Cloud. Thomas died intestate in September 1998 in South Carolina.

{¶6} In 2011 Chesapeake Exploration signed an oil and gas lease with the Millers. 8/27/14 Martin Miller Affidavit. However, shortly after signing the lease, Chesapeake rejected the lease claiming the Millers did not own the mineral rights. 8/27/14 Martin Miller Affidavit. Chesapeake determined Linda Cloud's interest in the mineral rights passed to her husband Thomas Cloud because those interests were not sold at the auction. Therefore, it concluded that upon his death the interests passed to his second wife, Sharron Cloud. Chesapeake signed a lease with Sharron Cloud in 2012 and paid her $103,410.00 as a signing bonus. 2/18/12 Lease.

{¶7} The Millers filed suit for declaratory judgment, quiet title, injunction, and sale of real estate against Cloud, Chesapeake Exploration, CHK Utica LLC, Total E & P USA, Inc., Dale Pennsylvania Royalty LP, and Jamestown Resources LLC in September 2013.

{¶8} Cloud answered with affirmative defenses in October 2013.

{¶9} In January 2014, the parties excused Defendants Chesapeake Exploration LLC, CHK Utica LLC, Total E&P USA, Inc., Dale Pennsylvania Royalty LP, and Jamestown Resources LLC (Lessee Defendants) from any further appearance in the suit. 1/23/14 Agreed Judgment Entry. Those defendants, however, were still subject to discovery as needed by the remaining parties. 1/23/14 Agreed Judgment Entry. The Millers and Cloud agreed the outcome of the lawsuit would not affect Lessee Defendants interest in exploring, drilling, or producing oil and gas from the property so long as the same was done in keeping with terms of the

lease. 1/23/14 Agreed Judgment Entry. Lessee Defendants agreed they would not pay any royalties to either the Millers or Cloud pending the resolution of the lawsuit and agreed to abide by the result of the lawsuit. 1/23/14 Agreed Judgment Entry.

{¶10} Following discovery, the Millers filed a motion for summary judgment. They argued the auction was an absolute auction, and all of Linda Cloud's interest was sold. They contended the "SURFACE ONLY" notation referred only to what the title company was insuring; it was not an indication the surface was only conveyed and the estate of Linda Cloud was retaining the mineral interest. Therefore, they contended reformation was permitted. They also argued they were entitled to the signing bonus and royalties from the already producing wells. 8/27/14 Summary Judgment Motion.

{¶11} Cloud filed a motion for summary judgment and a motion in opposition to the Millers' motion for summary judgment. 9/2/14 Motion for Summary Judgment; 9/15/14 Opposition Motion. Cloud asserted the statute of limitations had run on the reformation/quiet title claim and merger of the contract and deed applied. She argued the Millers' claims were barred by laches and equitable estoppel.

{¶12} The trial court granted partial summary for the Millers. 10/7/14 J.E. It found that while the statute of limitations set forth in R.C. 2305.06 and 2305.14 had run, R.C. 2305.22 provided an applicable exception. Thus, it determined remedial, ministerial correction in defective deeds may be made at any time. It found laches and equitable principles were not applicable. It also determined merger by deed was not applicable because Cloud did not have the rights of a bona fide purchaser except to the extent that her predecessor in title had such rights. Accordingly, it granted summary judgment on the reformation request and reformed the deed to exclude the "SURFACE ONLY" words. As to the signing bonus and royalties, the trial court denied the motion for summary judgment finding genuine issues of material fact remained. It further found the Millers had not demonstrated as a matter of law that they were the owners of the minerals at issue. Thus, the trial court refused to hold that they were legal owners of the minerals. 10/7/14 J.E.

**{¶13}** One month later, the parties entered into an Agreed Judgment Entry. Cloud agreed to preserve the funds she still had from the signing bonus and any royalties. This amounted to approximately $33,000.00, which was put into escrow. The remainder of the signing bonus she had already spent on purchasing a van and a home. 11/13/14 Agreed Judgment Entry.

**{¶14}** In April 2015, Cloud filed a motion for summary judgment on the signing bonus and royalty issue. 4/10/15 Motion. She asserted she was not a wrongdoer and should be entitled to the money.

**{¶15}** That same day, the Millers filed a motion for summary judgment asserting that either Chesapeake or Cloud was responsible for paying them the bonus. 4/10/15 Motion. They also claimed they were entitled to the royalties since they are the owners of the oil and gas mineral interests. 4/10/15 Motion.

**{¶16}** Chesapeake filed a motion in opposition to the Millers' motion for summary judgment. It asserted there was no claim in the complaint against it for disgorgement. Alternatively, it argued the stipulation that was agreed upon by all parties indicated Chesapeake's interests were unaffected by the reformation of the deed. This meant Chesapeake was not required to pay a second bonus for its alleged mistake. 4/24/15 Chesapeake Motion.

**{¶17}** After considering the motions, the trial court granted summary judgment in part to the Millers and in part to Cloud. 6/2/15 J.E. As to the signing bonus, it determined Cloud was not a wrongdoer, and as such, disgorgement against her was improper. It further found the Millers could not seek the signing bonus from Chesapeake because the relief was not requested in the compliant. As to the royalties, the trial court ruled in the Millers' favor. The royalty payment was deemed to be a valuable, separate right in the "bundle of interests" and was derived from the production of minerals. Since the royalties were held in escrow, the court concluded there was no hardship to Cloud. 6/2/15 J.E.

**{¶18}** The Millers and Cloud timely appealed from the trial court's decisions.

### Standard of Review

**{¶19}** The issues in the appeal and cross appeal concern the trial court's decision to grant summary judgment to the respective parties. An appellate court reviews the granting of summary judgment de novo. *Comer v. Risko*, 106 Ohio St.3d 185, 2005–Ohio–4559, 833 N.E.2d 712, ¶ 8. Thus, we apply the same test as the trial court in determining whether summary judgment was proper. A trial court may grant summary judgment only when (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party. Civ.R. 56(C).

**{¶20}** The initial burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts to show there is a genuine issue of material fact. *Id.*; Civ.R. 56(E). "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346, 1993–Ohio–191, 617 N.E.2d 1129.

### Second Assignment of Error[1]

"The trial court erred in granting the Millers' Motion for Summary Judgment."

**{¶21}** The trial court concluded the Millers were entitled to reformation of the deed. Cloud asserts the trial court employed the wrong standard when it stated reformation was permitted because the mistake in this instance was substantial. Cloud asserts a mutual mistake, not a unilateral or substantial mistake, is needed for reformation.

The current case law in Ohio concerning reformation is fairly clear:

"Reformation of an instrument [such as a deed] is an equitable remedy whereby a court modifies the instrument which, due to a mutual mistake

---

[1]The assignments of error are addressed out of order for ease of discussion.

on the part of the original parties to the instrument, does not evince the actual intention of those parties." *Jones v. Alvarez*, 12th Dist. No. CA2006–10–257, 2008–Ohio–1994, fn. 3, quoting *Mason v. Swartz*, 76 Ohio App.3d 43, 50, 600 N.E.2d 1121 (6th Dist.1991). "The purpose of reformation is to cause an instrument to express the intent of the parties as to the contents thereof, i.e., to establish the actual [agreement] of the parties." *Delfino v. Paul Davies Chevrolet, Inc.*, 2 Ohio St.2d 282, 286, 209 N.E.2d 194 (1965). Generally, reformation applies to cases involving mutual mistake, but not a unilateral mistake. *See Butler Cty. Bd. of Commrs. v. Hamilton*, 145 Ohio App.3d 454, 474, 763 N.E.2d 618 (12th Dist.2001).

*Cartwright v. Allen*, 12th Dist. No. CA2011-10-025, 2012-Ohio-3631, ¶ 12. *See also Osair v. Avery Internatl.*, 11th Dist. No. 2012-L-022, 2012-Ohio-6129, ¶ 19 (courts will not generally reform a contract in the case of a unilateral mistake); *Faivre v. DEX Corp. Northeast*, 182 Ohio App.3d 563, 913 N.E.2d 1029, 2009–Ohio–2660 (10th Dist.), ¶ 19 (same); *Dalton v. Smith*, 5th Dist. No. 2008CA0072, 2009-Ohio-2906, ¶ 58 (same).

**{¶22}** However, when a unilateral mistake occurred "'due to a drafting error by one party and the other party knew of the error and took advantage of it, the trial court may reform the contract. * * * Reformation is appropriate if one party believes a contract correctly integrates the agreement and the other party is aware that it does not, even though the mistake was not mutual.'" *425 Beecher, L.L.C. v. Unizan Bank, Natl. Assn.*, 186 Ohio App.3d 214, 2010-Ohio-412, ¶ 44 (10th Dist.), quoting *Galehouse Constr. Co., Inc. v. Winkler*, 128 Ohio App.3d 300, 303, 714 N.E.2d 954 (9th Dist.1998). *See also, Dalton v. Smith*, 5th Dist. No. 2008CA0072, 2009-Ohio-2906, ¶ 58; *Gerace Flick v. Westfield Nat. Ins. Co.*, 7th Dist. No. 01 CO 45, 2002-Ohio-5222, ¶ 93.

**{¶23}** The trial court's reference to a "substantial" mistake comes from a 1936 decision from the Second Appellate District - *State Sav. & Loan Ass'n v. Engle*, 72 N.E.2d 779, 781 (Ohio 2nd Dist.1936). In that case, the Second Appellate District

cites the Ohio Supreme Court decision in *Stewart v. Gordon*, 60 Ohio St. 170, 53 N.E. 797 (1899) and *Frate v. Rimenik*, 115 Ohio St. 11, 17, 152 N.E. 14 (1926) for the proposition that courts of equity will allow reformation for any substantial mistake of fact when established by clear and convincing evidence. *Engle*, 72 N.E.2d at 781. Those Ohio Supreme Court cases do not use the word substantial. Rather, those cases discuss mutual mistake and mutuality of mistake. Consequently, it would appear the key is not whether the mistake was substantial, but whether it was a mutual mistake.

**{¶24}** That said, in reading the trial court's decision it is clear the trial court found a mutual mistake. In its reasoning the trial court states, "The words SURFACE ONLY do not reflect the true intention of the parties. * * * Thus, there is clear and convincing proof that both parties understood the purchase agreement was not determinative of all mineral rights. * * * The Court concludes equity affords the Millers the restorative remedy of reformation in order to make the Executor's deed conform to the true intention, agreement and understanding of the parties." 10/7/14 J.E. Consequently, the trial court determined the mistake was mutual and summary judgment was appropriate.

**{¶25}** The question for this court is whether that determination was correct. It has been explained:

> Reformation is an equitable remedy that allows a court to change the language in a contract where the parties' true intentions have not been expressed due to a "mutual mistake"—meaning a common mistake by all the parties to the contract. * * * The party wishing to reform the [agreement] must demonstrate the "mutual mistake" by clear and convincing evidence. Clear and convincing evidence is the degree of proof necessary "to produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."

Citations omitted. *Huber v. Knock*, 1st Dist. Hamilton No. C–080071, 2008–Ohio–5900, ¶ 6.

**{¶26}** We have previously explained the clear and convincing standard of proof is used not only at trial to determine whether the party met their burden of proof, but it is also used to determine whether summary judgment is appropriate. *Teeter v. Teeter*, 7th Dist. No. 13 CA 887, 2014-Ohio-1471, ¶ 31 (indicating the Ohio Supreme Court has considered the clear and convincing standard when reviewing summary judgment awards). Thus, we must consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party (Cloud) to determine whether a reasonable jury could find mutual mistake with convincing clarity. *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008–Ohio–1041, 883 N.E.2d 1060, ¶ 11–12 ("'In ruling upon defendant's motion for summary judgment in a libel action brought by a public official, the court shall consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff to determine whether a reasonable jury could find actual malice with convincing clarity.'); *Dupler v. Mansfield Journal Co., Inc.*, 64 Ohio St.2d 116, 121, 413 N.E.2d 1187 (1980) ("In ruling on such a motion, the court is limited to examining the evidence 'taking all permissible inferences and resolving questions of credibility in plaintiff's favor to determine whether a reasonable jury acting reasonably could find actual malice with convincing clarity.' ").

**{¶27}** The Millers' evidence of mutual mistake comes from the deposition of Gary Evans, president of McMillan Abstract Co., the company performing the title search and issuing the title guarantee; the sales contract; the title commitment; the testimony of Attorney Robert C. Roberts, executor of the estate of Linda Cloud; the advertisement for the sale of the property; and the sale price.

**{¶28}** Gary Evans, president of McMillan Abstract Co., testified that his job and the job of his company was to identify problems with the title. Gary Evans Depo. 28. He avowed the surface estate was the only conveyance being insured. Gary Evans Depo. 27. He further explained, by adding the words "SURFACE ONLY" the company's intent was to make the parties aware there was a potential issue with the mineral title, meaning the company was not sure if Linda Cloud owned the minerals.

Gary Evans Depo. 28. Nothing in his testimony indicated the estate told him it was not selling the minerals Linda Cloud owned.

{¶29} The sales contract and the title commitment are a part of the stipulated exhibits. Those documents supported Evans testimony that the surface only language was an indication of what was being insured. A handwritten notation on the purchase agreement stated, "This transaction, pending completion of title guaranty, status of mineral rights can not be guaranteed."[sic] The commitment schedules listed various leases and one mineral conveyance excepting coal, clay, and timber. Schedule B, Paragraph 10. Evans testified the surface only language was put in the description because of the mineral conveyance. Evans Depo. at 49. Paragraph 12 of the schedule stated Attorney Robert C. Roberts, the executor, has the authority "to sell the decedents real estate listed under the last will and testament." That paragraph further provided, "Upon the filing of the duly executed fiduciary deed from the said executor to the proposed purchasers shown in item 2a of Schedule A herein, we will issue our final title guaranty subject only to the items contained in this commitment and matters intervening between the date of this commitment and date and time of filing said fiduciary deed."

{¶30} Attorney Robert C. Roberts, executor of the estate of Linda Cloud, also testified. He avowed he added the words "SURFACE ONLY" to the description in the executor's deed because of the purchase contract:

> The contract called for the seller to -- contract had a handwritten line that indicated that there was a question about the mineral rights and specifically said that we were going to get a title guarantee to tell us the status of that.
>
> And then the contract also required the seller to furnish a title guarantee, and I was representing the seller. And then to give a deed for whatever we had good marketable titling fee simple to.
>
> So following that instruction, our obligation under the contract I would have ordered title guarantee. And then when I got the title guarantee, it

showed on there on Schedule C in capital letters "surface only" and then directed me to the description that says twice in capital letters and underlined "surface only" and said that they – going back to Schedule A says that we have fee simple into the described property, which is surface only and then the description. So that's why I would have made the deed for surface only because the title company is telling me that we've got title to surface only. And I – was not a title agent, and my practice would be, I was trying to find out the status of the title, to hire or engage a reputable title company to tell me the status.

Roberts Depo. 34-35.

**{¶31}** He was asked, if the title guarantee indicated the estate had title to the minerals, would they have been sold; he responded they would have:

If the title guarantee had told me that we had good title to the surface and the mineral rights, then I believe the whole package would have been conveyed.

* * *

The surface and the mineral rights. Because I think the contract was instructing me to find that out from the title company.

So, you know, the implication of that line to me is, we're going to find out from a title company the status of the mineral rights, and if the mineral rights were – if we had fee simple marketable title to the mineral rights, that was going to be part of the deal; and if we didn't, then it wasn't.

Roberts Depo. 36.

**{¶32}** However, Roberts did admit that the "SURFACE ONLY" language is an indication that the title company was insuring only the surface and only the surface was being conveyed. Roberts Depo. at 52.

**{¶33}** The probate file from the estate of Linda Cloud, which is part of the stipulated exhibits, indicated the real property was appraised at $30,000. The property sold for $28,000 at auction, which was close to its appraised value. Martin Miller avowed no one announced before the auction the oil and gas rights were being retained by the estate. Miller Affidavit at 4. The purchase agreement did not indicate minerals were being reserved by the estate. Rather, the purchase agreement stated the mineral rights were not guaranteed under the title guaranty. That language indicated they were subject to sale. Otherwise, there was no need to state they could not be guaranteed.

**{¶34}** The advertisements for the auction of the real property, which were also part of the stipulated exhibits, did not indicate that only the surface was being sold. That said, those advertisements also did not indicate minerals were being sold. In short, the advertisements were silent on a reservation or selling of mineral interests.

**{¶35}** Cloud offered no evidence to refute testimony from Evans that his notation was an indication the surface only was being guaranteed. She also did not refute Roberts' testimony that the estate intended to sell all the interest it owned. She offered no testimony or evidence indicating the estate intended to reserve its interest in the minerals. She relied on the deed which stated "SURFACE ONLY" to support her position that the estate retained the mineral interest and she is the owner of that mineral interest. She also supported her position with the testimony from Roberts that if the deed says surface only, the estate conveyed only the surface.

**{¶36}** Previously we have upheld a trial court's decision to reform a deed concerning mineral interest where the deed did not contain the reservation of minerals, even though the purchase contract clearly stated the minerals were being reserved. *Robenolt v. Zyznar*, 7th Dist. No. 13 MA 129, 2014-Ohio-2593,¶ 13 (Purchase agreement retained mineral rights in seller but deed did not contain that language. Appellate court found purchase agreement constitutes clear and convincing evidence that the execution and recording of the deed without that reservation was a mutual mistake.); *Estate of Sudimak v. Ross*, 7th Dist. No. 94 C.A. 178, 1995 WL 697832 (Nov. 21, 1995) (Purchase agreement clearly retained mineral

rights in the seller. Seller's attorney acknowledged he had mistakenly omitted the mineral rights reservation from the deed. Reformation was granted and upheld on appeal.).

{¶37} Admittedly, the language in those purchase agreements was clearer than the language in the purchase agreement in this case. There is no clear language in the purchase agreement before us that the oil and gas minerals were being sold or retained.

{¶38} That distinction, however, does not mean the Millers failed to establish a mutual mistake and accordingly, are not entitled to summary judgment. In a case somewhat similar to the case sub judice, the Fourth Appellate District concluded the evidence demonstrated there was a mutual mistake even though the deed used the language "all of the surface." *Hartman v. Patton*, 4th Dist. No. 1343, 1987 WL 16564, (Sept. 1, 1987). The *Hartman* court acknowledged, "Ordinarily, the words 'surface only' mean that the mineral estate is in some other person." *Id.* However, the court concluded when the evidence was viewed in total, there was evidence of mutual mistake. *Id.*

{¶39} In *Hartman*, the Merritts owned the surface and minerals estate to a tract of land in Athens County, Ohio. In 1903, the Merritts conveyed all "the coal, iron ore, fire clay and salt water underlying the premises" to The New Pittsburgh Coal Company. *Id.* In 1904, the Merritts conveyed 1/2 interest in the remaining estate to Patton. A few years following that conveyance, Patton and the Merritts conveyed "all of the surface" to another party, and eventually that property was conveyed to Hartman. In all of those conveyances, language was included to subject the conveyances to The New Pittsburgh Coal Co.'s right to remove all coal, iron ore, fire clay and salt water underlying the surface. *Id.* In none of those conveyances was there any mention of the mineral interests that were not conveyed to The New Pittsburgh Coal Co.

{¶40} In 1984, the Patton heirs sought to quiet title in the remaining mineral estate and claimed they were the true owners of the oil and gas underlying the

premises. The appellate court disagreed and noted the problem was that the conveyances did not mention the oil and gas underlying the premises.

**{¶41}** The court went on to explain that the cardinal rule of construction of written instruments is that the intent of the parties controls. *Id.* It cited to an appellate court decision where the deed conveyed a fee simple estate in the granting clause, but contained a provision excepting the coal. *Id.*, citing *Anderson v. Pryor* 51 Ohio App. 35 (1935). The *Anderson* court held the deed conveyed all underlying interest in the oil and gas. *Hartman*, 4th Dist. No. 1343, citing *Anderson*. The *Hartman* court applying that case reasoned, if the Merritts and Patton intended to not convey their interest in oil and gas, they would have specifically provided for such exception. *Hartman*. The court also noted circumstantial evidence proved Patton and the Merritts believed they did not retain the oil and gas under the premises because after the conveyance they displayed no evidence of ownership of the oil and gas. *Id.* For example, neither the Merritts nor Patton made a disposition of the oil and gas interest to their heirs. *Id.*

**{¶42}** Consequently, the court concluded the use of the word "surface" did not provide notice that severance of the oil and gas minerals had occurred; given the evidence it was not the intention of the Merritts and Patton to convey only the surface of the land.

**{¶43}** We agree with that outcome and conclude it is applicable here given the specific facts of the case sub judice. Although the deed contains the words "surface only," the evidence indicates it was not the intention of the estate to retain the oil and gas. The title commitment lists various leases and one mineral conveyance excepting coal, clay and timber. However, there is no mention of oil and gas. This is similar to the *Hartman* case where the deed used the word "surface," listed the exception of coal, iron ore, fire clay and salt water, but did not reference oil and gas. Besides the omission of reference to oil and gas, in the case at hand we also have testimony from the executor that the estate was selling the entire interest it owned. The Millers' provided evidence it was their intent to purchase the minerals.

**{¶44}** Furthermore, similar to *Hartman*, the estate did not display evidence of ownership. There was no evidence of a fiduciary deed transferring the mineral interest to the beneficiary of Linda's estate. The trial court hones in on this point stating Cloud maintains her interest in the minerals by virtue of the Executor's deed and no other instrument – she has no separate tax identification number or paid real estate taxes on the mineral estate she claims was severed. This was just an example of her lack of evidence to dispute the claim of mutual mistake.[2]

**{¶45}** Cloud offered no evidence, other than the deed, to dispute it was the estate's intent to sell the minerals and to not retain them. Given the *Hartman* case and the evidence submitted by the Millers, Cloud does not provide sufficient evidence to survive summary judgment. Nothing in the record indicates it was the intention of the estate to retain the mineral interest. Accordingly, Cloud did not meet her reciprocal summary judgment burden.

**{¶46}** This assignment of error lacks merit.

First Assignment of Error

"The trial court erred in overruling Cloud's Motion for Summary Judgment."

**{¶47}** Multiple arguments are presented under this assignment of error. Each will be addressed in turn.

A. Statute of Limitations

**{¶48}** Cloud argued to the trial court and reasserts the argument on appeal that the statute of limitations has run on the Millers' claim for reformation of the deed.

**{¶49}** Although the trial court noted the statute of limitations espoused in R.C. 2305.06 and R.C. 2305.14 had expired, the court found the exception in R.C. 2305.22 was applicable. As such, the court concluded the action was timely.

**{¶50}** R.C. 2305.06 is the statute of limitations for written contracts. The current statute became effective September 28, 2012 and mandates that a cause of action based on a written contract must be brought within 8 years of the cause of

---

[2] The tax identification number is a part of the current version of the Ohio Dormant Mineral Act. That Act is not at issue in this case. However, that Act does show a way to claim interest in the mineral estate.

action accruing. The prior version of this statute allowed for a 15 year limitation period. R.C. 2305.06 (version prior to September 28, 2012).

{¶51} Here, the lawsuit was filed approximately 18 years after the cause of action accrued; the auction was held in October 1995; the Executor's deed was executed in November 1995; and the complaint was filed in September 2013. Thus, under either version of R.C. 2305.06, the action was filed outside the limitation period.

{¶52} R.C. 2305.14 provides that actions not specifically limited in any provision of the Revised Code must be brought within ten years after the cause of action accrued. This statute has been found to be applicable to equitable reformation claims. *Connor & Murphy, Ltd. v. Applewood Village Homeowners' Assn.*, 12th Dist. No. CA2007-09-213, 2009-Ohio-1447, ¶ 20. The discovery rule does not apply to this limitation period; a cause of action for reformation of a written instrument based upon mistake accrues upon the execution of the instrument, not upon discovery. *Thompson v. McVey*, 12th Dist. No. CA2006-03-006, 2006-Ohio-7036, ¶ 12, citing *Bryant v. Swetland*, 48 Ohio St. 194, 209, 27 N.E. 100 (1891). As stated above, the cause of action accrued approximately 18 years prior to the filing of the complaint. Accordingly, the statute of limitations under R.C. 2305.14 had run.

R.C. 2305.22 is titled "Exceptions" and provides:

Sections 2305.03 to 2305.21, 1302.98, and 1304.35 of the Revised Code, respecting lapse of time as a bar to suit, do not apply in the case of an action by a vendee of real property, in possession thereof, to obtain a conveyance of the real property.

R.C. 2305.22.

{¶53} If this statute is applicable, then it would render the limitation periods in R.C. 2305.06 and R.C. 2305.14 inapplicable. The trial court found it was applicable.

{¶54} Cloud finds fault with that determination. Cloud dissects R.C. 2305.22 and indicates there are three requirements for it to be applicable. One, the Millers have to be in possession of the oil and gas minerals. Two, oil and gas minerals have

to be considered real property. And three, the Millers must be vendees of the oil and gas mineral rights. Cloud contends none of these requirements are satisfied and the trial court erred in finding they were.

{¶55} Cloud's dissection of the statute is accurate; however, her conclusion that the trial court erred is incorrect.

{¶56} Under the first and second requirements, the Millers have to be in possession of the real property. The Millers clearly were in possession of the surface, which is real property. The questions become: are the oil and gas minerals real property; and were the Millers in possession of them when they received an executor's deed which conspicuously stated "<u>SURFACE ONLY</u>".

{¶57} Despite Cloud's contention to the contrary, unsevered minerals are real property; minerals become personal property when severed from the land. The Ohio Supreme Court set forth that rule of law in 1897. Thereafter, it has explained and reiterated that rule:

> In *Kelley v. Ohio Oil Co.*, 57 Ohio St. 317, 49 N.E. 399, 39 L.R.A. 765, 63 Am.St.Rep. 721, this court held that petroleum oil is a mineral, and while it is in the earth it forms part of the realty; and, when it reaches a well and is produced on the surface, it becomes personal property and belongs to the owner of the well. In the opinion by Burket, J., 57 Ohio St. on page 328, 49 N.E. [399] on page 401, it is said: 'Petroleum oil is a mineral, and while in the earth it is part of the realty, and should it move from place to place by percolation, or otherwise, it forms part of the tract of land in which it tarries for the time being, and, if it moves to the next adjoining tract, it becomes a part and parcel of that tract; and it forms part of some tract, until it reaches a well and is raised to the surface, and then for the first time it becomes the subject of distinct ownership separate from the realty, and becomes personal property, the personal property of the person into whose well it came. * * * It is the property of, and belongs to, the person who reaches it by means of a well and severs it from the realty and converts it into personalty.''

*Back v. Ohio Fuel Gas Co.*, 160 Ohio St. 81, 88-89, 113 N.E.2d 865 (1953). *See also Terteling Bros., Inc. v. Glander*, 151 Ohio St. 236, 243, 85 N.E.2d 379 (1949) ("Although land and minerals in place upon or beneath the land are real property even though separately owned, the minerals become personal property immediately upon severance.").

**{¶58}** The Ohio Supreme Court has once again reaffirmed that position and recognized it as a long standing rule in Ohio. *Chesapeake Expl., L.L.C. v. Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, ¶ 21-22.

**{¶59}** Accordingly, Cloud's contention that the minerals are not real property fails based on current and past Ohio Supreme Court decisions.

**{¶60}** However, the Millers must also be in possession of the minerals for R.C. 2305.22 to apply.

**{¶61}** Cloud contends the Millers had neither actual nor constructive possession of the minerals. She contends actual possession would not occur until the minerals are severed from the realty. She cites this court to an adverse possession case concerning minerals where the court explained "no party may be said to be in actual possession of the property" because no party had begun to extract coal. *Bergholtz Coal Holding Co. v. Dunning*, 11th Dist. No. 2004-L-209, 2006-Ohio-3401, ¶ 40. She contends that if mining is necessary, then it should be deemed she was in possession; when Chesapeake drilled and severed the minerals, it did so under the lease it signed with her. She does acknowledge in *Bergholtz Coal Holding Co.*, the court indicated in the absence of actual possession, constructive possession may be used to claim legal title. She asserts she has constructive possession because the deed shows the estate of Linda Cloud only sold the surface. The minerals stayed with the decedent's estate and passed to her through intestate succession.

**{¶62}** The Millers counter contending when they bought the property at auction it was for the entire interest the estate of Linda Cloud owned. They assert the estate did not retain the minerals and no one at the auction indicated only the surface was being sold. They also assert they were in control of the minerals since

1995 until Chesapeake entered a lease with Cloud and began drilling; they contend Cloud did not know about the mineral rights until Chesapeake informed her that she may own the mineral rights.

{¶63} For purposes of actual or constructive possession, the lease does not dictate whether the Millers or Cloud had possession of the minerals. The lease merely is a mechanism to authorize Chesapeake to extract whatever interest Cloud owned. If she owned no interest, then Chesapeake was not authorized to extract any minerals. Chesapeake does not have the authority to determine who owns the minerals. That is a decision for the courts.

{¶64} The issue of possession goes to the heart of whether reformation is permitted. Case law on R.C. 2305.22 and its application when it concerns real property is sparse. However, it has been explained:

> "[A]llowing a vendee in possession of real property to have that property legally conveyed to him, permits remedial, ministerial corrections in defective deeds to be made at any time. Reformation actions excepted from the statute of limitations by R.C. 2305.22 are those which merely protect a possessor's right to his interest in land conveyed by a defective deed or contract.

*Sams v. Nolan*, 4th Dist. No. 1326, 1987 WL 13947, (July 1, 1987).

{¶65} The Millers assert they purchased the surface together with the oil and gas minerals. They contend the words "SURFACE ONLY" should not have been added to the Executor's deed. The language "SURFACE ONLY" was an indication the title company was only guaranteeing surface.

{¶66} As aforementioned and set forth in the second assignment of error, the Millers provided evidence to substantiate their claim of mutual mistake. Based on that evidence, this court found mutual mistake in the execution of the deed. That evidence also leads us to the conclusion the Millers had constructive possession of the minerals. Nothing indicates it was the intention of the estate to retain the mineral interest. In fact, the executor indicated the estate was selling the entire interest it

owned, and an explanation for the words "SURFACE ONLY" on the deed was provided.

**{¶67}** The last requirement of R.C. 2305.22 is the Millers must be vendees. A vendee is defined as a purchaser of real property. Black's Law Dictionary (10th ed. 2014); *Yoho v. Robertson*, 7th Dist. No. 590, 1991 WL 66207, (Apr. 19, 1991) (must be a sale of real property to be a vendee). Roberts' deposition indicated it was the estate's intent to sell all of its interest in the property; the estate was not attempting to retain mineral interests. There is no evidence disputing that statement.

**{¶68}** Like the above analysis regarding possession, the issue of whether the Millers are a vendee is linked with the determination of whether they are entitled to reformation.

**{¶69}** For the above stated reasons, the trial court correctly determined R.C. 2305.22 and its exception to the statute of limitations is applicable to the case at hand. Any argument to the contrary is meritless.

B. Merger

**{¶70}** Cloud next argues the doctrine of merger by deed bars the Millers' claims. She asserts the contract merged into the deed, and thus, any alleged understanding by the Millers prior to the execution and delivery of the deed were merged into the deed. If those understandings were not specifically stated in the deed they are deemed waived or superseded by the language of the deed.

**{¶71}** The general rule of law is when a deed is delivered and accepted without qualification pursuant to an agreement, no cause of action upon the prior agreement exists thereafter. *Bell v. Turner*, 172 Ohio App.3d 238, 2007-Ohio-3054, 874 N.E.2d 820, ¶ 16 (4th Dist.), citing *Fuller v. Drenberg*, 3 Ohio St.2d 109, 209 N.E.2d 417 (1965), paragraph one of the syllabus. The purchase contract merges into the deed. *37 Robinwood Assoc. v. Health Industries, Inc.*, 47 Ohio App.3d 156, 157–158, 547 N.E.2d 1019 (1988).

**{¶72}** There are exceptions to the doctrine of "merger by deed." *Rockford Homes, Inc. v. Handel*, 5th Dist. No. 07CA006, 2007-Ohio-2581, ¶ 31. Usually, excepted from the merger doctrine are: false representations inducing acceptance of

the deed; evidence of fraud or mistake; the deed was accepted under protest and with a reservation of rights; or the purchase contract creates rights collateral to or independent of the conveyance. *Id.*; *Schlegel v. De Camp*, 3d Dist. No. 15-99-20, 2000 WL 791800, (June 6, 2000).

**{¶73}** The Millers contend the mutual mistake exception to the merger by deed doctrine is applicable in this instance. They contend the evidence shows mutual mistake.

**{¶74}** Cloud is of the opinion *37 Robinwood* is on point and supports her position that the contract merged into the deed. Accordingly she contends no cause of action on the prior contract survives and the contract and commitment cannot be used to show the parties meant something other than what was stated in the deed. In *37 Robinwood*, the court recognized there are exceptions to the doctrine of merger by deed, but found none of the exceptions were applicable. *37 Robinwood Assoc.*, 47 Ohio App.3d at 158. No discussion or analysis was provided as to why the exceptions were not applicable.

**{¶75}** Since *37 Robinwood* does not discuss the exceptions to the merger by deed doctrine, and the mutual mistake exception is asserted here, that case provides little insight.

**{¶76}** In the second assignment of error, we concluded there was clear and convincing evidence of mutual mistake, and thus, reformation of the deed was upheld. The extension of that holding is the merger by deed doctrine does not apply; the title commitment and the sales contract can be admitted into evidence to determine the true intention of the parties and to determine if there was a mutual mistake. *Osborne, Inc. v. Medina Supply Co.*, 9th Dist. No. 2918-M, 1999 WL 1260865, (Dec. 22, 1999) (doctrine of merger by deed not applicable because the contracts/documents admitted into evidence offered proof of the parties' intentions; the contracts/documents served as parol evidence of the mutual mistake).

C. Equity and Estoppel

**{¶77}** Cloud argues the trial court should have applied the principles of equity and estoppel to bar the Millers' claims. This is based on the fact they received a

deed stating "surface only" and waited approximately 18 years to have the deed reformed. Her argument focuses on the principle of estoppel by deed.

Black's Law Dictionary defines estoppel by deed as:

Estoppel that prevents a party to a deed from denying anything recited in that deed if the party has induced another to accept or act under the deed; esp., estoppel that prevents a grantor of a warranty deed, who does not have title at the time of the conveyance but who later acquires title, from denying that he or she had title at the time of the transfer.

Black's Law Dictionary (10th ed. 2014).

Likewise, the Sixth Appellate District has explained:

"The doctrine of estoppel by deed provides that where a grantor of real estate who has a defective title, or no title, conveys with a covenant of warranty, or its equivalent, and subsequently acquires the title, then such after-acquired title will inure to the benefit of the grantee by estoppel. This doctrine is equally applicable to a mortgagor who obtains title subsequent to the granting of the mortgage." *Gatts v. E.G. T.G., GMBH* (1983), 14 Ohio App.3d 243, 470 N.E.2d 425, at paragraph one of the syllabus. See, also, *Philly v. Sanders*, 11 Ohio St. 490. ("[A] grantor with warranty is estopped by his grant from setting up against his grantee, any after acquired title to the lands granted or conveyed, by the language of his prior deed * * *." Id., at 494-495.)

*U.S. Bank, N.A. v. Kennedy*, 6th Dist. No. L-07-1179, 2008-Ohio-981, ¶ 22.

**{¶78}** Considering those definitions, estoppel by deed is not applicable given the fact pattern before us.

**{¶79}** That said, the Ninth Appellate District indicated that estoppel by deed and merger by deed were the same doctrine and defined them by the merger by deed definition. *Davis v. Difilippo*, 9th Dist. Wayne No. 95CA0046, 1996 WL 137406, (Mar. 27, 1996). In interchanging the names of the doctrines, it cited *37 Robinwood Assoc. v. Health Industries, Inc.*, 47 Ohio App.3d 156, 157 (10th Dist.1988).

**{¶80}** Estoppel by deed is discussed in *37 Robinwood*, but it is done in such a way that it appears to be synonymous to merger by deed:

A similar result is reached by applying the equitable doctrine of "estoppel by deed." This doctrine precludes a party from denying a certain fact recited in a deed executed by or accepted by him in an action brought upon the instrument. See 42 Ohio Jurisprudence 3d (1983) 10, Estoppel and Waiver, Section 4, and Cleveland Boat Service, Inc. v. Cleveland (1955), 102 Ohio App. 255, 73 Ohio Law Abs. 557, 2 O.O.2d 292, 130 N.E.2d 421, paragraph two of the syllabus, affirmed (1956), 165 Ohio St. 429, 60 O.O. 85, 136 N.E.2d 274. A grantee, such as the appellee, who receives and accepts a conveyance, is bound by all its provisions and is estopped to deny their legal effect. 42 Ohio Jurisprudence 3d (1983) 24, at fn. 11, Estoppel and Waiver, Section 13, and 35 Ohio Jurisprudence 3d (1982) 290, 291-292, Deeds, Section 58.

*37 Robinwood* at 158.

**{¶81}** Given the definitions either estoppel by deed is not applicable or it is equivalent to merger by deed. If merger by deed is not applicable, neither is estoppel by deed.

D. Laches

**{¶82}** The last argument under this assignment of error is laches. Cloud argues the Millers' claim for reformation is barred by the equitable doctrine of laches. She contends the Millers, upon receiving the executor's deed, knew the surface only language was in it, and did nothing to correct that language until approximately 18 years later when Chesapeake signed a lease with Cloud and began drilling.

**{¶83}** The Millers' counter argument does not focus on the 18 year delay, but rather asserts there is no prejudice by their delay. They assert delay, in and of itself, does not constitute laches. They acknowledge that maybe they should have acted between 1995 and 2011, but until there was a risk of some material prejudice, laches

does not attach. Regardless, they assert there was no prejudice to Cloud. She had the use of the signing bonus that the trial court determined she was not required to return.

**{¶84}** The trial court concluded for purposes of laches, the correct focus is not on 1995 when the property was sold, but 2011 when the Millers' title to oil and gas rights was attacked. That was the date when Chesapeake voided a lease with the Millers because it determined Cloud was the owner. Cloud did not assert her right to the oil and gas until she executed a lease with Chesapeake in February 2012. Thus, since the action was filed in September 2013, the trial court reasoned it was not an unreasonable delay, and there was no prejudice to Cloud because she did not assert any right until 2012. 10/7/14 J.E.

**{¶85}** Laches consists of four elements. They are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party. *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections*, 74 Ohio St.3d 143, 145, 656 N.E.2d 1277 (1995). All four elements must exist for laches to apply.

**{¶86}** The Millers are correct that without a showing of prejudice there can be no finding of laches. *In re Guardianship of Mull*, 7th Dist. No. 15 BE 11, 2015-Ohio-5440, ¶ 69 (theory of laches failed for many reasons including no evidence of prejudice). Delay in asserting a right does not, without more, establish laches. *Sims v. Anderson*, 2015-Ohio-2727, 38 N.E.3d 1123, ¶ 20 (4th Dist.). Rather, the person invoking the doctrine must show the delay caused material prejudice. *Sims*, citing *Connin v. Bailey*, 15 Ohio St.3d 34, 35-36, 472 N.E.2d 328 (1984). "'[I]n order to successfully invoke the equitable doctrine of laches it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting his claim.'" *Thirty–Four Corp. v. Sixty–Seven Corp.*, 15 Ohio St.3d 350, 354, 474 N.E.2d 295 (1984).

**{¶87}** Prejudice by the delay was not shown in this instance. Chesapeake signed and voided a lease with the Millers in 2011. The Millers claim they hired an attorney to do a title search at that time. In February 2012, Cloud signed a lease with

Chesapeake. The Millers assert they learned about the lease in April 2012 and hired an attorney. Allegedly, there were settlement negotiations prior to suit. Suit was filed in September 2013.

{¶88} Accordingly, as there is no evidence of prejudice, the laches argument fails.

<u>Third Assignment of Error</u>

"The trial court erred in ordering the disgorgement of money Cloud received as royalty payments."

{¶89} This assignment of error addresses the trial court's June 2, 2015 judgment entry. In that decision, the trial court addressed the royalties and signing bonus Cloud received from the lease with Chesapeake. The court determined Cloud was not required to disgorge the signing bonus. However, it concluded she was not entitled to the royalty payments of $3,823.22; the Millers were entitled to the royalties. This assignment of error deals strictly with the royalties.

{¶90} In determining the Millers were entitled to the royalties, the trial court concluded:

> The right to receive a royalty payment is a valuable, separate right in the "bundle of interests" and is derived from the production of minerals, when and if there is production. The Seventh District acknowledges the distinction between the payment of a bonus and a royalty in *Eisenbarth v. Reusser*. Moreover, unlike the signing bonus that was paid in 2012, the parties have stipulated that Chesapeake paid royalties in September and October of 2014. The royalties were therefore paid while this action was pending and close to the time that this Court determined reformation is a proper remedy and that the Millers are entitled to have their title to the minerals quieted against competing claims of interest by Ms. Cloud. Allowing the Millers to recover "this stick", both past and future, also works no hardship inasmuch as the royalties have been held in trust and are being escrowed and/or

payment of future royalties has been deferred pending a resolution of this case.

6/2/15 J.E.

**{¶91}** Cloud contends she is not a wrongdoer and the equitable remedy of disgorgement should not be used against her.

**{¶92}** Case law is sparse on disgorgement as to the situation before us. Disgorgement is defined as, "the act of giving up something (such as profits illegally obtained) on demand or by legal compulsion." Black's Law Dictionary (10th ed. 2014). In the context of a corporate officer, it is an equitable remedy in the absence of a statute to the contrary. *Scullin v. Mut. Drug Co.*, 138 Ohio St. 132, 133, 33 N.E.2d 922 (1941); *Biggins v. Garvey*, 90 Ohio App.3d 584, 604, 630 N.E.2d 44 (11th Dist.1993) (remedy for a breach of the fiduciary duty owed by a corporate officer is disgorgement of any profits received). In the situation of a noncompete clause that had been incorporated into a court's order, the court may order the violator to disgorge profits and to establish compliance with the clause*. ITS Fin., L.L.C. v. Gebre*, 2d Dist. No. 25416, 2014-Ohio-2205, ¶ 37. Thus, it appears when a party is a wrongdoer disgorgement is an option.

**{¶93}** Cloud asserted no interest in the minerals until contacted by Chesapeake, who advise her of her apparent ownership. However innocent her initial actions were, the trial court found no such ownership. The minerals belong to the Millers; the trial court did not abuse its discretion in ordering the royalties disgorged. As the trial court explained, the royalties were held in escrow and Cloud is not prejudiced by not receiving the royalties that were to be paid during the pendency of the suit.

**{¶94}** Consequently, this assignment of error has no merit.

Cross Appeal

Cross Assignment of Error

"The trial court erred in not ruling that the Appellees Millers are entitled to the lease signing bonus money from Appellant or Appellee Chesapeake and ignored this Court's ruling in *Eisenbarth v. Reusser*, 2014-Ohio-3792 (CA 7th Dist.)."

**{¶95}** This issue is somewhat related to the third assignment of error on direct appeal. It deals with the trial court's June 2, 2015 judgment, but deals with the signing bonus, not the royalties. The Millers sought disgorgement of the signing bonus from Cloud. If disgorgement was determined to be unavailable, they asserted Chesapeake should be required to pay them a signing bonus.

**{¶96}** Even though their title to the minerals was quieted, the trial court determined the Millers were not entitled to either relief. 6/2/15 J.E. In rendering its ruling, the trial court explained that Chesapeake approached Cloud in 2012, before the action was filed, about leasing the oil and gas minerals. The Millers asserted it was Chesapeake that determined Cloud held title to the minerals and determined it would void the lease with the Millers and enter a lease with Cloud. The trial court ultimately held there was a mutual mistake in the deed and permitted reformation, which quieted title of the oil and gas minerals to the Millers. The trial court, however, did not grant the Millers' request for disgorgement. The trial court specifically found Cloud was not a wrongdoer and would be prejudiced by disgorgement. It further stated disgorgement is rarely appropriate where a party conducts their affairs in good faith. 6/2/15 J.E. It explained:

> Wrongdoing is not established simply because Ms. Cloud received a signing bonus. According to the case law and at least one treatise, the signing bonus is consideration for merely signing the lease. The right to receive a signing bonus is "separate and distinct" from the right to receive royalty or other payments. By definition, a "bonus" is "[A] payment that is made in addition to royalties and rent as an incentive for a lessor to sign an oil-and-gas lease." The Seventh District Court of Appeals appears to have at least implicitly recognized the distinction in Eisenbarth v. Reusser. In that case, the Court acknowledged that the right to receive a bonus payment is a stick separate from the right to enter into a lease and the other "sticks in the bundle." Because the right to receive a bonus payment is a separate stick, the corollary is that a rightful owner is not entitled to recover *any portion* of the signing

bonus from a lessor, even if the lessor was in wrongful possession of the land. The Millers recognize this authority. Based on its research this Court concludes the rule continues to prevail.

6/2/15 J.E.

**{¶97}** As to Chesapeake, the trial court found the relief of seeking compensation from Chesapeake was not requested in the complaint. Instead, the Millers requested Cloud's lease to be declared void, or alternatively, they wanted to be substituted as the lessors. Thus, based on the requested relief, the court determined the Millers could not collect the signing bonus from Chesapeake.

**{¶98}** Both parties and the trial court discuss this court's decision in *Eisenbarth v. Reusser* in reference to the issue of whether the signing bonus is required to be disgorged. In *Eisenbarth,* the five sticks of a severed mineral estate were discussed. One stick is the singing bonus and one stick is the right to receive royalty payments. These are separate and distinct sticks. *Eisenbarth v. Reusser*, 2014-Ohio-3792, 18 N.E.3d 477, ¶ 60 (7th Dist.). The issue in *Eisenbarth* was whether the conveyance of the right to lease (one stick of the bundle) was also the conveyance of the right to receive the signing bonus (another stick of the bundle). *Id.* We determined given the language of the deed in that case, the conveyance was merely for the right to lease:

> It has been stated that the various incidents of ownership of a mineral interest can be separately transferred. And, in general, it does not appear disputed that the characteristics of owning a half of a mineral estate in situ remain with the grantor (for his one half) unless otherwise stated.

> Here, the deed did state otherwise; it conveyed away the right to lease. This executive right is merely "one stick in the bundle" of conveyable rights. We agree that the other rights existing in the mineral estate that were not specifically granted were retained (as to the grantor's one-half).

Internal citations omitted. *Eisenbarth* at ¶ 61-62.

**{¶99}** *Eisenbarth* clearly indicates royalties are a separate stick from the signing bonus. Other than that legal proposition, *Eisenbarth* is not instructive on whether disgorgement is a proper remedy in this situation. *Eisenbarth* is not factually similar to the matter at hand. Here, given the deed reformation, the oil and gas mineral estate was not severed from the surface, and the Millers hold all five sticks of the bundle. However, merely because they hold all five sticks does not mean that disgorgement is an appropriate remedy given the facts of this case.

**{¶100}** One treatise has explained that the primary consideration for the lease is the royalty payments. 3 Williams & Meyers, *Oil and Gas Law*, Section 666, at 793 (2012). However, it is customary for oil and gas leases to include a signing bonus. *Id*. Often the lease contains language that the bonus payment is subject to "approval of title." *Id*. Thus, a bonus could also be consideration for the lease.

**{¶101}** The treatise, however, does not indicate whether disgorgement would be correct in the situation before us. The statement that leases typically contain language that the bonus payment is subject to approval could imply that the fault for paying the signing bonus would be on the lessee. Meaning the lessee takes the risk of paying a bonus if it approves title when there are conflicts between two possible mineral owners.

**{¶102}** Thus, the Millers could have sought the signing bonus from Chesapeake. However, the Millers did not seek that relief; the trial court correctly found such relief was not requested. Also, the Millers foreclosed themselves of that relief when they agreed to the January 23, 2014 judgment entry. The second paragraph of that entry states:

> All the parties agree and recognize that the Lessee Defendants are holders of or have an interest in an oil and gas leased signed by Defendant Cloud on February 18, 2012 covering the real estate that is subject of this action and as found in the Memorandum of Lease Recorded in O.R.V. 1866, age 323 of Columbiana County Records. The Plaintiffs and Defendant Cloud agree that the outcome of this lawsuit

will not affect any right, title or interest that the Lessee Defendants have in exploring, drilling, or producing oil and gas form the property so long as the same is done in keeping with the terms of the lease.

1/23/14 J.E.

**{¶103}** This statement is an indication Cloud's lease is the lease that will be used regardless of who is determined to be the mineral holder. In other words, the Millers agreed to step into Cloud's shoes. Under Cloud's lease the bonus payment was already made. Thus, Chesapeake is under no obligation under that lease to pay a second bonus payment. Accordingly, the trial court correctly determined the Millers could not collect the signing bonus from Chesapeake.

**{¶104}** This leaves this court with the issue of whether the trial court erred in determining disgorgement from Cloud was not an option. As discussed above, disgorgement is used when there is wrongdoing. In this case, given the language of the deed, one could conclude that Cloud owned the oil and gas minerals. The deed contained the words "SURFACE ONLY." Without considering any other evidence, the logical conclusion is that the Millers only owned the surface. At the time of the auction of Linda Cloud's estate, Sharron Cloud was Thomas Cloud's wife. However, the record does not suggest Sharron Cloud was a party to the auction and/or that she knew the minerals were being sold. Nothing suggests she was at the auction, that she was involved in the purchase agreement, or that she was involved in any manner concerning the sale. This is not a situation where a party knows the agreement is for the oil and gas minerals to be sold with the surface, but allows the language "surface only" to be used in the deed and later claims it means the minerals were not sold. That would be a situation where the party is a wrongdoer. This is not the situation before us.

**{¶105}** Furthermore, Cloud would be prejudiced if the equitable remedy of disgorgement was allowed. It appears all but about $30,000 was spent by her in good faith. As previously indicated, disgorgement is an equitable remedy. It would be inequitable to cause that hardship to Cloud since she did no wrong. As such, we

conclude the trial court did not abuse its discretion in denying the Millers' request for disgorgement of the signing bonus.

**{¶106}** This assignment of error has no merit.

<u>CONCLUSION</u>

**{¶107}** The trial court's decisions are affirmed. All assignments of error lack merit. The grant of summary judgment in favor of the Millers on the issue of mutual mistake and reforming the deed is correct. Likewise, the trial court's determination that the Millers are entitled to the royalties, but Cloud is not required to disgorge the signing bonus is also correct.

Donofrio, P.J., concurs.

DeGenaro, J., dissents; see dissenting opinion.

DeGenaro, J., dissenting.

{¶108} I respectfully dissent from the majority's decision. Given the procedural posture of this case, a remand is warranted; there are genuine issues of material fact, which cannot be vetted via summary judgment.

{¶109} First, I disagree with the majority's conclusion that Cloud failed to meet her summary judgment burden. As an initial matter, "[u]nder Civ.R. 56, the moving party bears the initial burden to inform the trial court of the motion's basis and to identify those portions of the record that demonstrate the absence of a material fact * * * and the nonmoving party need not present evidence on claimed material issues where the movant in a motion for summary judgment has failed to support his contention that no genuine issue of material fact upon which reasonable minds could differ supports the nonmoving party's case." *Saunders v. Holzer Hosp. Found.*, 4th Dist. No. 06CA3, 176 Ohio App.3d 275, 2008-Ohio-1032, 891 N.E.2d 1202, ¶ 11; *see also Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 274 (1996).

{¶110} Moreover, the deed in this case, and the language it employs, is itself evidence of the parties' intent. While it is true the deed does not explicitly reserve mineral rights, it clearly states "SURFACE ONLY" as the description of the real property interest being conveyed. The West Virginia Supreme Court has given a history of the definition of the term surface as used in deeds:

> Other courts had, however, by the 1930s, universally recognized that the fluctuating, expanding definitions of "surface" did not reflect ambiguity, but rather showed the term being refined and gaining clarity and certainty. For instance, the Supreme Court of Montana noted the older definitions, but also found "surface" could encompass "grazing, agricultural, residential, or townsite purposes." Another court suggested "surface" goes beyond "the actual top of the ground" and "means something more than that portion of the land which is or may be used for agricultural purposes," and should include "all the earth substructure" except the minerals. A federal court of appeals found the "surface" included "all of the right to use the surface for such ordinary

uses as may be made thereof, with the right to use as much of the subsurface as may be necessary for the customary and ordinary uses of the surface, just as the owner of the subsurface estate has a correlative right to use the surface in order to develop the subsurface rights."

By this time courts simply accepted that terms like "surface," or "surface only" were "plain and ordinary words used in [a] clear and unmistakable manner." Hence, there would be no question that in a deed of "the surface only," "the surface only was conveyed, and all of the remainder of the property was retained by the grantor." Even if the grantor noted an express reservation in the grantor of coal and other minerals, such language "was not necessary, as they had not been conveyed by the instrument which conveyed the surface only." Since the 1930s, the term "surface" has largely been regarded as a word of clear meaning, unless that meaning is plainly altered by other language in the instrument of conveyance.

*Faith United Methodist Church & Cemetery of Terra Alta v. Morgan,* 231 W.Va. 423, 440, 745 S.E.2d 461 (2013) (citations omitted).

{¶111} Based upon this reasoning, the Court in *Morgan* then concluded the use of the word only in the deed to qualify the word surface "in that sense means 'solely' or the equivalent of the phrase 'and nothing else.'" *Id.* at 444 (citation omitted). *See also Riedt v. Rock Island Improvement Co.*, 521 P.2d 79 (Okla.1974); *Stucki v. Parker*, 108 Idaho 929, 932, 703 P.2d 693 (1985); *Shell Oil* Co. v. *Moore,* 382 Ill. 556, 48 N.E.2d 400 (1943). "Harmonizing the 'surface only' language with the reservation of 'none' leads to the conclusion that the intent reflected in the document was to convey the surface estate without retaining rights to any of the substances that belong to the surface estate owner." *Dupnik v. Hermis*, Tex.App. No. 04–12–00417–CV, 2013 WL 979199 (Mar. 13, 2013).

{¶112} I find this reasoning persuasive, especially when considered within the context of Ohio's Marketable Title Act. Thus, the phrase "surface only" has a clear meaning, specifically, that the surface interest only was being conveyed and not any subsurface interests, such as oil and gas. This is reinforced by the issues disclosed in the title commitment, that there is a mineral conveyance and a lease in favor of a gas company attached to the property. Thus, based on the above, the deed, and the language it employs, is certainly evidence in favor of Cloud's position.

{¶113} Second, the majority's reliance on *Robenolt* and *Sudimak* to support its decision to grant summary judgment in favor of the Millers must be placed in context; both cases resolved the issue at trial, not via summary judgment. Moreover, these two cases are factually distinguishable; in each, the reservation of mineral rights differed between the purchase agreement and deed. Here, the purchase agreement flagged an issue with respect to mineral rights, and the title commitment and deed noted that only surface rights were being conveyed.

{¶114} As for the majority's reliance on *Hartman*, I find the resolution of that case problematic and would not follow it. There, the parties' intentions were divined via a procedural device that expressly precludes resolving disputes of material fact; these are more properly resolved at trial where credibility can be tested.

{¶115} Likewise, here the record contains conflicting evidence of whether there was a mutual mistake about whether the oil and gas rights were conveyed to the Millers, thus creating an issue more properly resolved by a jury, or trier of fact, not via summary judgment by the trial court. First, and most importantly, as discussed above, there is a deed that clearly states "SURFACE ONLY." And as recounted by the majority, the summary of the deposition testimony of the estate attorney was that the only interest the estate would convey to the Millers would be the interest Cloud owned. There were issues with clear title to the mineral rights raised via disclosures in the title commitment; these included a mineral conveyance and leases to oil and/or gas companies.

{¶116} Second, as noted by the majority, the purchase agreement demonstrates there was a question regarding title to the mineral rights and whether

or not they could be conveyed. As acknowledged by the trial court in its judgment entry, the Millers could have refused to sign the purchase agreement. Third, to elaborate on the leases briefly noted by the majority, several leases are disclosed in the title commitment, two of which potentially involved mineral rights; specifically a 1978 lease to Hiland Oil & Gas Enterprises, Inc. and a 1933 lease to the Natural Gas Company of West Virginia. This is in addition to the 1936 mineral conveyance of coal, clay and timber. Although the title commitment states those recorded documents were attached as exhibits thereto, none of them were included in the trial court court record in this case.

{¶117} Thus, the title commitment provides that only the validity of the surface title will be guaranteed. Forth and finally, the fact that the auction advertisement for the property makes no reference to mineral rights does not support the conclusion that the intent was to convey them; in fact the ad plainly states: "For further details, please call auctioneer."

{¶118} Thus, for all of these reasons, and given the conflicting evidence, the trial court's judgment should be reversed and the case remanded for trial to resolve genuine issues of material fact, specifically, the parties' intentions and whether there was a mutual mistake.