[Cite as *Kocher v. Ascent Resources-Utica, L.L.C.*, 2025-Ohio-1311.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

### SUSAN KOCHER ET AL.,

Plaintiffs-Appellants,

v.

### ASCENT RESOURCES-UTICA, LLC ET AL.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case Nos. 24 JE 0019, 24 JE 0020, 24 JE 0021**

---

Civil Appeals from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 20 CV 82

**BEFORE:**
Katelyn Dickey, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Sean Richard. Scullin*, Scullin & Cunning, LLC, for Plaintiffs-Appellants Susan Kocher et al. and

*Atty. Jeffrey J. Bruzzese*, Bruzzese, Hanlin & Bruzzese, LLC, for Defendants-Appellees James T. Banal, Jr. et al. and

*Atty. J. Zachary Zatezalo*, Bordas and Bordas, PLLC, for Defendants-Appellees James and Rebecca Mills.

Dated: April 10, 2025

**DICKEY, J.**

{¶1} In these consolidated appeals, Plaintiffs-Appellants, Susan Kocher et al., consisting of 81 individuals and one company, Bedway Land and Minerals Co. (Bedway), appeal the September 12, September 13, and October 2, 2024 judgments of the Jefferson County Court of Common Pleas.

{¶2} Appellants are heirs, successors, assigns, and owners of approximately 102.167 mineral acres of real property in Jefferson County, Ohio, as divided into six parcels. Appellants initially filed suit seeking to quiet title to the oil and gas rights underlying the property and named the surface owners of the real property, including: Defendants-Appellees Ascent Resources-Utica, LLC (Ascent), James M. and Rebecca L. Mills (the Mills), Heather C. Mazey, Trustee of the Fashing Family Irrevocable Trust, James T. Banal, Jr., and Norman T. Fashing and Joyce K. Fashing, as Co-Trustees of the Norman T. Fashing and Joyce K. Fashing Family Trust (collectively the Fashings), and Defendants Maria S. Banal, L.D. Jenkins, and Mary L. Gorman. Appellees had leased Appellants' 9/10 interest in the minerals and received $643,107.96.

{¶3} The trial court ultimately granted Appellees summary judgment as a matter of law and found Appellants' interests in the underlying oil and gas rights, if any, were extinguished via the Marketable Title Act (MTA). The court quieted title in Appellees' favor and determined Appellees own 100% of the oil and gas mineral interest underlying the property. The court did not address the parties' claims and arguments arising from the Dormant Mineral Act (DMA).

{¶4} Appellants filed their first appeal, Case Nos. 22 JE 0012 and 22 JE 0014. On September 28, 2023, this court affirmed in part, reversed in part, and remanded. *Kocher v. Ascent Resources-Utica, LLC*, 2023-Ohio-3592, ¶ 3, 73 (7th Dist.) (*Kocher I*). In *Kocher I*, this court reversed the trial court's decision finding Appellants' interests have been extinguished by the MTA and remanded the matter to the trial court to address the parties' DMA, quiet title, and damages arguments. *Id.* at ¶ 71-73.

{¶5} On remand, the trial court, on September 12, September 13, and October 2, 2024, quieted title in favor of Appellants as to the 9/10 interest finding that affidavits of preservation were timely filed under the DMA. However, the court denied Appellants'

Case Nos. 24 JE 0019, 24 JE 0020, 24 JE 0021

motion for summary judgment as to damages. Specifically, the court held that Appellants are not entitled to recover $643,107.96 in bonus money (that Appellees received for leasing their mineral acreage) because Appellees are not wrongdoers for purposes of disgorgement as set forth in *Miller v. Cloud*, 2016-Ohio-5063 (7th Dist.).

**{¶6}** The present appeals, Case Nos. 24 JE 0019, 24 JE 0020, and 24 JE 0021, focus on Appellants' right to recover the $643,107.96 in bonus money Appellees received pursuant to the remedies of accounting, constructive trust, and/or disgorgement. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

**{¶7}** By way of background, this court stated in *Kocher I*:

## Chain of Title

The parties filed copies of the following documents.

The deed recorded January 14, 1921 reflects the grantors, Mary Kithcart, Clyde Kithcart, Francis Kithcart, James Kithcart, Georgia Black, and John Black conveyed to Wm. H. Iler and Irving S. Iler a portion of the real property described in part as "Part S.W. Quarter Section #15, Twp. 8, Range 3" and "containing 41-4/10 acres, more or less." (Report of Rod Swearingen, Exhibit 4.) This left the approximate 102 acres now in dispute. (Report of Daryl J. Kirtley). A transfer was recorded on June 16, 1924. It shows the same transaction recorded in the deed, which was recorded in January of 1921 and conveying "Part S.W. Quarter Sec. #15, Twp. 8, Range 3" and "containing 41-4/10 acres, more or less." (Report of Daryl J. Kirtley, Exhibit 10.)

The affidavit for transfer recorded June 12, 1933, shows real estate inherited by James T. Kithcart's heirs. His heirs include Georgia Black, Clyde Kithcart, and James T. Kithcart, and the transaction shows each obtained a 1/3 share of the real estate described in part as "containing 102

46/100 acres, more or less." (Exhibit C to Exhibit 1 to Plaintiffs' Summary Judgment Response.)

The deed recorded June 16, 1933, conveys the property from Georgia and John Black, James and Mary Kithcart, Clyde and Frances Kithcart to ten grantees, i.e., Ethel Murphy, Esta Stinard, Wilmetta Bellan, John Hartzell, Gladys Hennebert, Raymond Hartzell, Lawrence Hartzell, Rowland Hartzell, Mattie Hartzell and Virginia Hartzell, as heirs of James V. Hartzell, deceased. It conveyed real property in Smith Township, Jefferson County consisting of "102 46/100 acres, more or less" but excepting the coal rights previously sold. This 1933 deed does *not* contain a mineral rights exception. (June 4, 2021 Mills Motion for Summary Judgment, Exhibit E.) Thus, each of the ten grantees obtained a 1/10 joint ownership interest in the surface and in the mineral rights underlying the property.

The warranty deed recorded October 11, 1955 shows Minnie Iler, a widower, granting to Bedway Coal Company four different parcels in Smithfield Township, Jefferson County. One of the four listed parcels is described in part as "containing 41.4 acres more or less." The conveyance excepted 1.91 acres conveyed by William and Irving Iler to the Jefferson Coal Company in 1924. (Report of Daryl J. Kirtley, Exhibit 16.) This transaction shows Bedway acquiring the previously severed 41.4 acres.

Four deeds or title transactions were recorded on February 9, 1957.

The warranty deed dated July 30, 1956 and recorded February 9, 1957 shows Virginia Brake, a widow, granting her interest in the surface and mineral rights to Raymond V. Hartzell, which gave him a 2/10 ownership interest. (Exhibit G to Exhibit 1 to Plaintiff's Response to Summary Judgment Motions.)

Bedway acquired its surface interest in the 102 acres via three separate deeds recorded on February 9, 1957. Two of these three February

1957 deeds contained a clause reserving the grantors' respective mineral rights.

One warranty deed recorded February 9, 1957 conveyed "102 46/100 acres, more or less" from grantors, Ethel M. Murphy, unmarried, Esta and Loman Stinard, John and Martha Hartzell, and Gladys and Frank Hennebert, to the Bedway Coal Co. It states in part it is: "Also excepting and reserving all minerals except Vein Number Eight . . . of coal." (Complaint, Exhibit A.)

By another warranty deed recorded February 9, 1957, Raymond and Louise Hartzell, Lawrence and Lillian Hartzell, Rowland and Bessie Hartzell, and Mattie Hartzell, unmarried, conveyed real estate consisting of "102 46/100 acres, more or less" to the Bedway Coal Co. It states in part it is: "Also excepting and reserving all minerals except Vein Number Eight. . . ." (Complaint, Exhibit B.)

By an administrator's or executor's deed, also recorded February 9, 1957, Mary Rembish, as executrix for the estate of Wilmetta Belon, aka Bellan, conveyed to the Bedway Coal Company real estate consisting of "an undivided one-tenth (1/10th) interest in the following described real estate: . . . containing 102 46/100 acres, more or less." This deed does *not* contain a reservation of mineral rights. (Complaint, Exhibit C.)

In the year 2000, Bedway sold its surface rights to the property via three title transactions.

On April 7, 2000, Bedway conveyed 34.72 surface acres to David A. Bailey, a portion of a 102.46 acre tract. This limited warranty deed states in part: "EXCEPTING AND RESERVING all coal, oil, gas, mineral rights and mining rights previously conveyed. Applicable to both tracts." (Exhibit L to Exhibit 1 to Plaintiffs' Summary Judgment Response.)

Bailey subsequently conveyed his real property to James T. Banal, Jr. by limited warranty deed recorded August 29, 2003. This property is described as consisting of two tracts "[b]eing a portion of a 102.46 acre tract conveyed to Bedway Coal Company . . . ." This deed states the conveyance was: "EXCEPTING AND RESERVING all coal, oil, gas, mineral rights and mining rights previously conveyed. Applicable to both tracts." (Exhibit M to Exhibit 1 to Plaintiffs' Summary Judgment Response.)

On April 25, 2000, Bedway conveyed 37.489 acres to James and Rebecca Mills via a joint and survivorship deed. It describes the property as being portions of two tracts conveyed to Bedway Coal Company. This deed also stated it was: "EXCEPTING AND RESERVING all coal, oil, gas, mineral rights and mining rights previously conveyed." (Exhibit N to Exhibit 1 to Plaintiffs' Summary Judgment Response.)

Bedway Coal Company conveyed 67.5 acres to Norman T. and Joyce K. Fashing via a joint and survivorship deed recorded on July 17, 2000. Both tracts conveyed are described as being a portion of a "102.46 acre tract conveyed to Bedway Coal Company." This deed states it is: "EXCEPTING AND RESERVING all coal, oil, gas rights and mining rights previously conveyed." It also states: "EXCLUDING all coal, oil, gas and mineral rights previously conveyed." (Exhibit Q to Exhibit 1 to Plaintiffs' Summary Judgment Response.)

(Emphasis sic). *Kocher*, 2023-Ohio-3592, at ¶ 21-36 (7th Dist.).

**{¶8}** Consistent with *Kocher I*, Appellants point out the following individuals were the owners of the surface and the minerals as of the early-2000s, based on the records of the Jefferson County Recorder:

| | | |
|---|---|---|
| **Surface** | Banal, Mills, and Fashing | 10/10 |
| **Minerals** | Raymond V. Hartzell | 2/10 |
| | Esta J. Stinard | 1/10 |

| | |
|---|---|
| John C. Hartzell | 1/10 |
| Gladys V. Hennebert | 1/10 |
| Ethel M. Murphy | 1/10 |
| Lawrence L. Hartzell | 1/10 |
| Rowland S. Hartzell | 1/10 |
| Mattie L. Hartzell | 1/10 |
| Banal, Mills, and Fashing | 1/10 |

(12/30/2024 Appellants' Brief, p. 2, citing Plaintiffs' Motion for Summary Judgment, Expert Report of Daryl J. Kirtley, ¶ 21, 24-26).

{¶9} The Mills retained Attorney Michael J. Shaheen to pursue abandonment through the DMA. Attorney Shaheen conducted a title search. On November 16, 2012, Attorney Shaheen published a notice of abandonment as to the 9/10 interest in the minerals underlying surface Parcel No. 30-00120-003, including the 29.105 acres of minerals that are part of the subject 102 mineral acres. The notice of abandonment was published in the *Herald-Star*, a newspaper of general circulation throughout Jefferson County.

{¶10} On January 15, 2013, Attorney Shaheen prepared and recorded an affidavit of abandonment on behalf of the Mills in Jefferson County, Ohio, at Deed Book: Volume 1035, Page 387. Also on that same date, Appellants, Alan G. Burkett, Deborah Ellen Consoli, and Christine P. Bickel, filed affidavits to preserve the 102 mineral acres, including the 29.105 acres of minerals that underlie surface Parcel No. 30-00120-003. On July 8, 2013, Appellant Marylyn M. Klee filed a fourth affidavit to preserve under the DMA.

{¶11} On August 5, 2013, the Mills signed an oil and gas lease with Great River Energy, LLC (Great River) that covered the Mills' 29.105 mineral acres beneath surface Parcel No. 30-00120-003. Great River paid the Mills a contractual signing bonus. The Mills received $6,000 per acre.

{¶12} On September 13, 2013, the Fashings signed an oil and gas lease with Paloma Partners, III, LLC (Paloma) as to the 9/10 interest in the minerals beneath surface Parcel Nos. 30-00120-000, 30-00120-005, and 30-00126-000 which include 38.342 of the

mineral acres. The Fashings received $7,200 per acre. The Fashings relied on a title search performed by Attorney Larry Piergallini. On October 14, 2013, the Fashings published notices of abandonment as to the 9/10 interest in the minerals beneath surface Parcel Nos. 30-00120-000, 30-00120-005, and 30-00126-000 pursuant to the DMA which include 38.342 of the 102 mineral acres.

{¶13} On December 2, 2013, Appellant James V. Hartzell filed a fifth affidavit of preservation for the 102 mineral acres under the DMA. One week later, the Fashings filed two affidavits of abandonment.

{¶14} On February 26, 2014, Banal signed an oil and gas lease with Paloma for the minerals beneath surface Parcel Nos. 30-00120-001 and 30-00120-002. All 34.72 acres are part of the 102 mineral acres. Banal received $7,600 per acre. Banal did not attempt abandonment under the DMA.

{¶15} On December 15, 2017, the Fashings purported to convey the 9/10 mineral interest beneath surface Parcel Nos. 30-00120-000, 30-00120-005, and 30-00126-000 to the Fashing Irrevocable Trust.

{¶16} In August 2018, the Mills' lease was subsequently renewed by Ascent. Ascent paid the Mills a renewal bonus. Ascent commenced drilling operations related to the Mills' property under the lease.

{¶17} The Mills received $157,167, the Fashings received $248,456.16, and Banal received $237,484.80, totaling $643,107.96.

{¶18} Appellants filed suit in February 2020. Appellants filed their first amended complaint in November 2020 and their second amended complaint on February 1, 2021. Appellants' second amended complaint named Appellees as defendants. Appellants asserted Appellees are surface owners of the six parcels at issue and they wrongfully leased the attendant mineral rights underlying their respective real properties.

{¶19} Appellees moved to dismiss certain claims contending each was a remedy and not a cause of action. The trial court agreed and dismissed four counts in Appellants' complaint. Appellants did not challenge this decision. The remaining counts after the motion to dismiss include the following.

{¶20} The first count in Appellants' second amended complaint sought declaratory judgment and a determination that Appellants are the owners of the mineral interests

underlying the property. Appellants' second count sought to quiet title the ownership of the property's mineral interests in their favor as owners or holders. Appellants' third count asserted an unjust enrichment claim.

{¶21} In their prayer for relief, Appellants sought declaratory judgment finding Appellees failed to comply with the DMA; an order quieting title in their favor to the mineral rights; and an order for an accounting of and imposition of a constructive trust for all funds received from the minerals, including royalties, and any other relief deemed necessary. Appellants did not specifically allege any fraud or misconduct on the part of Appellees.

{¶22} The Mills counterclaimed to quiet title in their favor regarding the respective mineral rights. The Fashings also counterclaimed and sought declaratory judgment and to quiet title in their favor.

{¶23} After the exchange of discovery, on June 4, 2021, Appellants and Appellees filed motions for summary judgment seeking respective ownership of, and quiet title to, the subject mineral interests.

{¶24} The Fashings contended the 1957 Rembish deed is their root of title and that it does not contain an oil or gas reservation or exception. They also alleged the Rembish deed did not repeat a prior reservation or exception. They alleged their predecessor in interest, Bedway, acquired title to the 102 acres from ten co-owners of the property or co-tenants. The Fashings alleged that Appellants' claims to the mineral rights were extinguished via the MTA in light of their unbroken chain of title in the land for more than 40 years. The Fashings asserted because Appellants' claims stem from transactions before the 40-year period, these interests were extinguished as a matter of law. As for any alleged savings events, the Fashings claimed the title transactions were general, not specific, and thus do not constitute savings events. Alternatively, the Fashings argued Appellants' interests, if any, were abandoned under the DMA.

{¶25} The Mills also claimed the 1957 Rembish deed was their root of title and showed they were the record title owners to the mineral rights. The Mills alleged the Rembish deed met the substantive aspect of the root of title definition. The Mills claimed because the real property was jointly owned by nine owners, Wilmetta Belon's conveyance to Bedway of a 1/10 interest had the effect of conveying an "undivided share and had the right of possession of the whole of the surface and mineral rights." *See*

*Kocher*, 2023-Ohio-3592, at ¶ 12 (7th Dist.), quoting (7/16/2021 Response to Summary Judgment).

**{¶26}** Appellants urged the trial court to find that neither the MTA nor the DMA applied and that their mineral interests were still viable. With respect to Appellees' MTA arguments, Appellants contended the Rembish deed was not a proper root of title. Regarding the DMA, Appellants claimed the surface owners failed to conduct a diligent search before resorting to notice by publication and that, regardless, there were timely notices to preserve recorded.

**{¶27}** The trial court held a hearing on the cross-motions for summary judgment and dismissed Appellants' unjust enrichment claim. Appellants did not challenge that dismissal.

**{¶28}** On July 26, 2022, the trial court denied Appellants' motion for summary judgment and granted summary judgment in favor of Appellees, the surface owners, and found pursuant to the MTA, Appellees had unbroken chains of title from the recording of the Rembish deed to the present and Appellants' interests were extinguished by operation of law.

**{¶29}** Appellants appealed, Case Nos. 22 JE 0012 and 22 JE 0014. On September 28, 2023, this court affirmed in part, reversed in part, and remanded. *Kocher,* 2023-Ohio-3592, at ¶ 3, 73 (7th Dist.). In *Kocher I*, this court reversed the trial court's decision finding Appellants' interests have been extinguished by the MTA and remanded the matter to the trial court to address the parties' DMA, quiet title, and damages arguments. *Id.* at ¶ 71-73.

**{¶30}** On remand, the trial court filed three judgment entries on September 12, September 13, and October 2, 2024, each correcting an error in the prior entry as to the ownership of the remaining 1/10 interest in the minerals. The court granted Appellees summary judgment on count three of Appellants' second amended complaint for unjust enrichment. The court granted Appellants summary judgment on count one of their second amended complaint for declaratory judgment under the DMA and count two of their second amended complaint to quiet title to the subject minerals consisting of approximately 102.167 acres. However, the court denied Appellants' motion for summary judgment as to damages. Specifically, the court held that Appellants were not entitled to

Case Nos. 24 JE 0019, 24 JE 0020, 24 JE 0021

recover $643,107.96 in bonus money because Appellees were not wrongdoers for purposes of disgorgement as set forth in *Miller*, 2016-Ohio-5063 (7th Dist.).

**{¶31}** Appellants filed the present appeals which were consolidated, Case Nos. 24 JE 0019, 24 JE 0020, and 24 JE 0021, and raise two assignments of error.

## SUMMARY JUDGMENT STANDARD OF REVIEW

An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995).

"[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293, 662 N.E.2d 264. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could

rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 386, 701 N.E.2d 1023 (8th Dist.1997).

The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327, 364 N.E.2d 267.

*Doe v. Skaggs*, 2018-Ohio-5402, ¶ 10-12 (7th Dist.).

### ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ERRED BY FAILING TO FIND THAT APPELLEES DID NOT CONDUCT A REASONABLE SEARCH FOR APPELLANTS UNDER THE DMA.**

**{¶32}** In their first assignment of error, Appellants contend the trial court erred in failing to find that Appellees did not conduct a reasonable search. Appellants attempt to argue that Appellees failed to abandon the minerals under the DMA. Appellants believe Appellees failed to search the public records before publishing their notices of abandonment.

**{¶33}** The DMA provides a mechanism for surface owners to take ownership of the severed mineral rights thereby reuniting the mineral rights with the surface rights. A surface owner seeking to do so must comply with R.C. 5301.56, "Abandonment and preservation of mineral interests."

**{¶34}** R.C. 5301.56(B) provides that severed minerals shall be deemed abandoned and vested in the surface owner unless, within the 20 years immediately before the surface owner's notice of abandonment, the minerals were subject to, among other things, a title transaction under R.C. 5301.56(B)(3)(a) or a claim to preserve under R.C. 5301.56(B)(3)(e).

**{¶35}** Mineral holders are also given an opportunity to preserve under R.C. 5301.56(H)(1) by filing a claim within 60 days following the surface owner's notice of abandonment.  Specifically, R.C. 5301.56(H)(1) states:

(H)(1) If a holder or a holder's successors or assignees claim that the mineral interest that is the subject of a notice under division (E) of this section has not been abandoned, the holder or the holder's successors or assignees, not later than sixty days after the date on which the notice was served or published, as applicable, shall file in the office of the county recorder of each county where the land that is subject to the mineral interest is located one of the following:

(a) A claim to preserve the mineral interest in accordance with division (C) of this section;

(b) An affidavit that identifies an event described in division (B)(3) of this section that has occurred within the twenty years immediately preceding the date on which the notice was served or published under division (E) of this section.

R.C. 5301.56(H)(1)(a)-(b).

**{¶36}** In this case, the trial court found for Appellants on the DMA issue by applying the plain language of R.C. 5301.56(H)(1)(a) which gives a mineral holder the opportunity to preserve a mineral interest by filing a preservation claim within 60 days after the date in which a notice of abandonment was served or published.  Specifically, in its October 2, 2024 judgment, the trial court stated:

The Court finds, as to the 1/10th interest in the mineral[s], Defendant[s] Mills, Fashing, and Banal, consistent with the Seventh District Court of Appeals opinion, in Case No. 22-JE-0012 and 22-JE-0014, upholding the trial court's finding that the three title transactions recorded in the year 2000 did not create a reservation of the mineral rights in Bedway's favor.

Case Nos. 24 JE 0019, 24 JE 0020, 24 JE 0021

As to the remaining 9/10th interest in the minerals, the Court finds that R.C. 5301.56(H)[(1)](a) states that "not later than sixty days after the date on which the notice was served or published," mineral holders can file claims to preserve. Burkett, Consoli, and Bickel, all of whom are mineral holders timely filed claims to preserve the minerals January 15, 2013 within the sixty days of the Mills' notice.

The Court further finds that the filed preservation preserves all mineral interest in the subject 102 acres for all Plaintiffs. R.C. 5301.56(C)(2) states that such a claim, "preserves the rights of all holders of a mineral interest in the same lands." Additionally, Plaintiff Marylyn Klee timely filed her preservation in accord R.C. 5301.56(C).

The Court further finds that on October 13, 2013, the Fashings published notice of abandonment. On December 2, 2013, Plaintiff, James V. Hartzell filed a fifth claim to preserve the minerals. His claim was also timely.

The Court further finds that Defendant, Banal made no attempts to re-unite the severed mineral interests under the DMA.

Therefore, the Mills, the Fashings nor Banal did not comply with the DMA. Based thereon, title to the subject 9/10th interest in the 102 mineral acres is quieted in favor of the Plaintiffs.

As to the Plaintiffs' claim for unjust enrichment fails in that Defendants, Mills, Banal, and Fashings lease came from Great River Energy, LLC and Paloma Partners III, LLC in that the Plaintiffs did not confer that benefit upon Defendants.

As to the remedies sought by the Plaintiff, the Court finds that Mills, Fashings nor Banal is a wrongdoer consistent with the Seventh District Court of Appeals opinion in *Miller v. Cloud*, 15 CO 0018, 2016-Ohio-5063.

Therefore, the remedies sought in Plaintiffs' Second Amended complaint are denied.

It is hereby Ordered that the Plaintiffs are the owners of the 102.167 mineral acres at issue in the proportions set forth in Appendix A attached hereto as amended.

(10/2/2024 Judgment Entry, p. 5-6).

**{¶37}** As found by the trial court, the record reveals Banal did not attempt abandonment under the DMA. The Mills filed their notice of abandonment on November 16, 2012 and first-in-time affidavit of abandonment on January 15, 2013. Mineral holders Burkett, Consoli, and Bickel timely filed claims to preserve on January 15, 2013 within 60 days of the Mills' notice pursuant to R.C. 5301.56(H)(1)(a). Also, on October 14, 2013, the Fashings published a notice of abandonment. On December 2, 2013, Appellant James V. Hartzell filed a fifth claim to preserve the minerals. His claim was also timely. The court's finding in favor of Appellants under the DMA regarding the subject 9/10 interest should end the issue.

**{¶38}** Appellants stress "[t]he fact is, Mills and The Fashing Family Trust did not conduct a reasonable search under the DMA because they did not want to find Appellants." (12/30/2024 Appellants' Brief, p. 7). Contrary to Appellants' position, the court did not need to reach the issue as to whether Appellees conducted a reasonable search under the DMA in order to decide the matter in Appellants' favor. Even if Appellants had produced evidence which might lead this court to conclude that Appellees acted unreasonably, summary judgment would still not be appropriate because reasonableness is generally a question of fact inappropriate for consideration on summary judgment. *See generally Dennison Bridge, Inc. v. Resource Energy, L.L.C.*, 2015-Ohio-4736, ¶ 34 (7th Dist.).

**{¶39}** Appellants' allegation that Appellees are wrongdoers is premised upon this court's decision in *Miller*, 2016-Ohio-5390 (7th Dist.). In *Miller*, this court held that disgorgement may be available when there is wrongdoing and that the record was void of any facts demonstrating that Cloud engaged in any such activity. *Id.* at ¶ 104-105. This court also held that Cloud would be prejudiced if the equitable remedy of

disgorgement were allowed, in part because she spent most of her bonus money in good faith. *Id.* at ¶ 105. This court affirmed that disgorgement is an equitable remedy and further held it would be inequitable to cause that hardship to Cloud since she did no wrong. *Id.* at ¶ 105-107.

**{¶40}** Like *Miller*, the record in the case sub judice is void of any evidence demonstrating that Appellees engaged in any wrongful or fraudulent activity in connection with leasing of the subject minerals. Again, Banal did not even attempt to have the minerals deemed abandoned. The other Appellees hired attorneys that conducted title searches, followed the abandonment procedure, and recorded affidavits of abandonment with respect to their clients' good faith efforts under the DMA. Appellees relied on their attorneys' work and professional opinions. There is nothing to establish that Appellees engaged in any fraud or misrepresentation. Appellants ignore the prejudice that would be put on Appellees by any disgorgement in the current year, 2025. Any bonus money that was received in connection with the execution of the leases at issue happened years ago.

**{¶41}** The good faith belief of Appellees being the rightful owners of the minerals, even though mistaken in part, is supported by the attorneys and the trial court which also initially believed these minerals were rightfully owned by Appellees. The simple fact that the trial court subsequently found that the minerals were not abandoned does not automatically lead to the conclusion that Appellees acted wrongfully or in bad faith. A belief, even if mistaken, may be held in good faith. *See, e.g., Reighard v. Cleveland Elec. Illuminating*, 2006-Ohio-2814, ¶ 15 (7th Dist.), quoting *Transamerica Ins. Co. v. Nolan*, 72 Ohio St.3d 320, 322 (1995). Nothing in the record suggests that Appellees had anything other than a good faith belief they owned the 10/10 of the minerals by virtue of the MTA and/or the DMA.

**{¶42}** Bonus money in the context of an oil and gas lease equates to consideration. The right to receive a bonus payment is a separate and distinct right from other rights associated with mineral ownership. *See Miller*, 2016-Ohio-5390, at ¶ 99 (7th Dist.), citing *Eisenbarth v. Ruesser*, 2014-Ohio-3792, ¶ 60-62 (7th Dist.) ("royalties are a separate stick from the signing bonus.") Appellees ultimately prevailed on a 1/10 ownership interest in the minerals. Great River and Ascent paid bonuses to sign leases

with Appellees for their mineral interests, which does not operate to make those bonus payments Appellants.

**{¶43}** Appellants' first assignment of error is without merit.

### ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT ERRED BY DENYING APPELLANTS THE REMEDIES SOUGHT IN THEIR SECOND AMENDED COMPLAINT.**

**{¶44}** In their second assignment of error, Appellants allege the trial court erred in denying them the remedies they sought in their second amended complaint in which they sought damages based on "an accounting of, the imposition of a constructive trust over, and the disgorgement of a 9/10 share of the bonus money ($643,107.96) that Appellees . . . received from leasing Appellants' 9/10 interest in minerals." (12/30/2024 Appellants' Brief, p. 8). Appellants stress, "Having made no effort to comply with the DMA, [Appellees] are clearly wrongdoers who should be subject to the disgorgement of the bonus money they received." (*Id.* at p. 10).

**{¶45}** Appellants filed their second amended complaint on February 1, 2021 naming Appellees as defendants and alleging seven counts: (1) declaratory judgment; (2) quiet title; (3) unjust enrichment; (4) constructive trust; (5) accounting; (6) restitution; and (7) disgorgement. The trial court dismissed the last four counts.

**{¶46}** After unsuccessfully attempting to recover the money through a claim for unjust enrichment, Appellants attempt a back-door recovery arguing equity. In their brief, Appellants cite to decades-old out-of-state cases from Oklahoma and South Dakota. However, in Ohio, the law is clear that "'[a]n accounting, like a constructive trust, is an equitable remedy, not a cause of action[.]'" *Francisco A. Mateo MD, Inc. v. Proia*, 2023-Ohio-3908, ¶ 55 (7th Dist.), quoting *Krohn v. Ostafi*, 2020-Ohio-1536, ¶ 37 (6th Dist.); *see also Moore Family Trust v. Jeffers*, 2023-Ohio-3653, ¶ 45 (7th Dist.) (The equitable remedy of accounting is generally contingent upon the existence of a fiduciary or trust relationship between the parties). Likewise, restitution and disgorgement are equitable remedies. *Cirino v. Bur. of Workers' Comp.*, 2021-Ohio-1382, ¶ 15-16 (10th Dist.), citing

*Santos v. Ohio Bur. Of Workers' Comp.*, 2004-Ohio-28, ¶ 11 (Holding "neither 'restitution' nor 'equitable disgorgement' are claims or causes of action; rather, they are remedies.")

**{¶47}** There is no evidence of a fiduciary or trust relationship in this case. There is also no evidence in the record to support a finding that Appellees engaged in fraud or any unconscionable conduct. Contrary to Appellants' position, disgorgement is improper because there is no evidence of wrongdoing on the part of Appellees. *See Miller*, 2016-Ohio-5390, at ¶ 104 (7th Dist.). Further, bonus money paid to enter into lease agreements is separate and distinct from the property ultimately owned by Appellants. *Id.* at ¶ 96 ("Wrongdoing is not established simply because Ms. Cloud received a signing bonus. According to the case law and at least one treatise, the signing bonus is consideration for merely signing the lease. The right to receive a signing bonus is 'separate and distinct' from the right to receive royalty or other payments.")

**{¶48}** Turning to Appellants' claim regarding unjust enrichment, this court stated in *Templeton v. Winner Enterprises, Ltd.*, 2024-Ohio-2745 (7th Dist.):

> "[T]he elements of unjust enrichment are '(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment ("unjust enrichment").'" *Filo v. Liberato*, 2013-Ohio-1014, 987 N.E.2d 707, ¶ 35 (7th Dist.), citing *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984). "Unjust enrichment occurs when a person 'has and retains money or benefits which in justice and equity belong to another.'" *Bldg. Industry Consultants, Inc. v. 3M Parkway, Inc.*, 182 Ohio App.3d 39, 2009-Ohio-1910, 911 N.E.2d 356, ¶ 16, (9th Dist.) quoting *Hummel v. Hummel*, 133 Ohio St. 520, 528, 14 N.E.2d 923 (1938). "The purpose of an unjust enrichment claim is to compensate the plaintiff for the benefit she has conferred on the defendant." *Lucas v. Eclipse Companies, LLC*, 7th Dist. Monroe No. 23 MO 0007, 2023-Ohio-4728, 2023 WL 8892516, citing *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 21.

*Templeton* at ¶ 37.

**{¶49}** The Supreme Court of Ohio has held: "The rule of law is that an indirect purchaser cannot assert a common-law claim for restitution and unjust enrichment against a defendant without establishing that a benefit had been conferred upon that defendant by the purchaser." *Johnson*, 2005-Ohio-4985, at ¶ 22.

**{¶50}** Our Sister Court addressed unjust enrichment under similar circumstances in *Thompson v. Custer*, 2018-Ohio-4476 (11th Dist.).  In that case, the Thompsons brought an unjust enrichment claim against the Custers seeking payment of an oil and gas leasing bonus the Custers received from lessor BP.  In rejecting the Thompsons' claim, the Eleventh District recognized that "[t]he doctrine of unjust enrichment provides an equitable remedy imposed to prevent injustice."  *Id.* at ¶ 46, quoting *Giles v. Hanning*, 2002-Ohio-2817, ¶ 13 (11th Dist.).  The Eleventh District further held:

> [A]ny benefit the Custers received under the lease they negotiated with BP was conferred upon them by BP, not by the Thompsons. Based on this fact alone, the Thompsons cannot succeed on their claim of unjust enrichment as a matter of law. The Thompsons assert this is "a myopic understanding and expression of the unjust enrichment doctrine." In support, they cite to a 1973 treatise on remedies. Ohio law is clear, however, that the benefit unjustly retained must have been conferred on the defendant by the plaintiff. *See*, *e.g.*, *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 22; *Paulus v. Beck Energy Corp.*, 7th Dist. Monroe, 2017-Ohio-5716, 94 N.E.3d 73, ¶ 94-95; *see also Hughes v. Oberholtzer*, 162 Ohio St. 330, 335, 123 N.E.2d 393 (1954)

*Thompson* at ¶ 47.

**{¶51}** Appellants have no cause of action at law against Appellees for the recovery of the bonus money and, therefore, have none in equity.  "Under Ohio law, '[o]nly a party to a contract or an intended beneficiary may claim rights under the contract. . . . For a person to be considered an intended third-party beneficiary, the contract must have been entered into directly or primarily for the benefit of that person. . . .'" *Terry v. Hancock-*

*Wood Elec. Coop., Inc.*, 2009-Ohio-4925, ¶ 28 (6th Dist.), quoting *Ramminger v. Archdiocese of Cincinnati,* 2007-Ohio-3306, ¶ 16 (1st Dist.).

**{¶52}** Appellants admit they conferred no benefit upon Appellees. *See* (10/23/2020 Plaintiffs' Responses to Defendants' Second Set of Interrogatories and Requests for Admission, Exhibit I) (Appellants admit that "no Plaintiff[-Appellant] has conferred any benefit upon any Defendant[-Appellee] in this case.") Appellants' admission ends this issue under Ohio law. *See Templeton*, 2024-Ohio-2745, at ¶ 37 (7th Dist.); *Johnson*, 2005-Ohio-4985, at ¶ 22; *Thompson*, 2018-Ohio-4476, at ¶ 47 (11th Dist.).

**{¶53}** Appellants' second assignment of error is without merit.

## CONCLUSION

**{¶54}** For the foregoing reasons, Appellants' assignments of error are not well-taken. The September 12, September 13, and October 2, 2024 judgments of the Jefferson County Court of Common Pleas are affirmed.

Waite, J., concurs.

Robb, P.J., concurs.

[Cite as *Kocher v. Ascent Resources-Utica, L.L.C.*, 2025-Ohio-1311.]

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgments of the Court of Common Pleas of Jefferson County, Ohio, are affirmed.  Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**